T. Jason Wood, Esq. [ISB No. 5016]
WOOD LAW GROUP, PC
1488 Midway Avenue
Idaho Falls, ID  83406
Telephone: (208) 497-0400
Fax: (208) 932-4380
Email: jason@woodlaw.net
*Attorneys for Plaintiffs*

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARTHUR BAKER,<br><br>    Plaintiffs,<br><br>v.<br><br>CLEARWATER COUNTY, CITY OF OROFINO, AMANDA BARLOW, MATT RUSSELL, and CHRIS GOETZ,<br><br>    Defendants. | Case No. 2:20-cv-376<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

ARTHUR BAKER, for cause of action against the above-named defendants, alleges as follows:

1. This is an action for money damages and declaratory and injunctive relief arising under 42 U.S.C. §1983, under the Fourth and Fourteenth Amendments to the United States Constitution, the Idaho Tort Claims Act (ITCA), Idaho Code § 6-901, *et seq*., and Idaho common law.

2. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), and 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b).

4. Plaintiff is, and at all times material hereto was, a married 73-year-old resident of Clearwater County, Idaho, and the owner of certain property in Clearwater County on which he resides.

5. Defendant Clearwater County is, and at all times material hereto was, a political subdivision of the State of Idaho acting pursuant to its official, established policies, procedures, and practices.

6. Defendant City of Orofino is, at all times material hereto was, a political subdivision of the State of Idaho, acting pursuant to its official, established policies, procedures, and practices.

7. Defendant Chris Goetz is, and at all times material hereto was, the duly elected Sheriff of Clearwater County, Idaho, acting in his official and individual capacity within the course and scope of his office as Sheriff and pursuant to Clearwater County's established policies, procedures, and practices.

8. Defendant Amanda Barlow was, at all times material hereto, a duly appointed Deputy Sheriff, acting in her individual capacity within the course and scope of her employment with defendant Clearwater County and pursuant to its established policies, procedures, and practices.

9. Defendant Matt Russell was, at all times material hereto, a duly appointed officer for the Orofino City Police Department, acting in his individual capacity within the course and scope of his employment therewith and pursuant to its established policies, procedures, and practices.

10. Christine Nelson is, and at all material hereto was, a resident of the Clearwater County, Idaho, owned and/or occupied certain property in Clearwater County adjacent to Plaintiff's property on which she resided, and had close personal relationships with the defendants, particularly with defendants Barlow, Goetz and his wife.

11. At all times material hereto, Nelson's only access to her property was via two roads that crossed Plaintiff's property, both of which were controlled by a gate. Nelson's access on one of the roads was granted by a deeded easement across Plaintiff's property. The other was not based upon an easement but upon a bare license pursuant to revocable permission granted by Plaintiff and his predecessor in interest.

12. In 2018 Nelson and Plaintiff were engaged in civil litigation over the bare license described above. During the course of or leading up to that dispute, Plaintiff revoked Nelson's license and locked the gate to the previously licensed access, but he left Nelson with access to her property via the easement.

13. In response, despite Nelson's easement access, Nelson repeatedly and continuously trespassed on Plaintiff's property via the road and gate for which Nelson's access had been revoked. She even tore out Plaintiff's gate and posts and refused to compensate Plaintiff for the damage.

14. Plaintiff reported to the defendants, and attempted to press charges against, Nelson for her ongoing trespassing and malicious injury to Plaintiff's property, to no avail. Defendant Clearwater County expressly refused to get involved in investigating or prosecuting their close friend, Christine Nelson.

15. On advice of counsel, in order to preserve evidence of Nelson's ongoing trespassing, Plaintiff began recording Nelson's acts of trespass, but from a distance and without confrontation.

16. One evening, when Plaintiff was recording Nelson trespassing and attempting to open Plaintiff's gate, Nelson exited her vehicle, rushed Plaintiff and sprayed him in the face with mace or pepper spray, causing him severe injury.

17. Plaintiff again reported Nelson's assault and battery to defendant Clearwater County law enforcement, again to no avail, but instead maliciously prosecuted him for stalking Nelson.

18. In July 2018 the defendants were each personally aware of the ongoing dispute between Nelson and Plaintiff as described, in part, above.

19. On or about July 30, 2018, Plaintiff posted on his gate a written notice to Nelson that her license to use that particular access was revoked. Nelson nevertheless ripped the notice off the gate in order and attempted to trespassed on Plaintiff's property again. Plaintiff refused her access. Nelson called the defendants and demanded they intervene.

20. Defendant Barlow responded at the scene. In the course of interviewing Plaintiff, Barlow acknowledged she was aware of the ongoing dispute, that Plaintiff had revoked Nelson's license, that Nelson had unfettered ability to access to her property via the easement across Plaintiff's property, that Plaintiff had wanted Nelson to use the easement instead of the revoked license, that Plaintiff had committed no assault, battery, nor even presented a threat to Nelson, and that the access dispute was a "civil matter," not a criminal matter within the defendants' jurisdiction.

21. Nelson told defendant Barlow that although the gate to the access granted by easement was unlocked, she did not like to use it because it was bumpy and her vehicle would "bottom out" on that road.

22. In fact, Plaintiff routinely used the road in his small, two-wheel-drive vehicle with low ground clearance and was able to do so without significant difficulty, of which he advised defendant Barlow.

23. Nelson did not tell Barlow the road was impassable, and none of the defendants bothered to inspect the road to make such a determination.

24. Instead, defendant Barlow demanded that Plaintiff open his gate and allow Nelson to trespass on his property, because she thought his refusal was unreasonable and "ridiculous," and that they all "just get along," as she recounted in her written incident report, a true and correct copy of which is attached hereto as Exhibit 1.

25. When Plaintiff did not immediately comply with Barlow's unlawful command, she demanded that Plaintiff "unlock this [gate] now or you are going to jail for resisting and obstructing." Plaintiff told her he was reaching into his pocket for his phone to record the incident. Barlow "told him no, [you] are going to jail." Exhibit 1.

26. Defendant Barlow then moved to arrest and handcuff Plaintiff. Plaintiff attempted to put his cell phone back into his pocket so that it would not get dropped, damaged, lost, or stolen. He explained this to Barlow. However, Barlow characterized Plaintiff's attempt as "resisting," as a pretext for an arrest which was already in progress. She threatened to tase him if he did not cease his attempt. Plaintiff complied.

27. Plaintiff then volunteered to Barlow that he would open gate in order to avoid arrest. Defendant Barlow responded that "it is too late." Exhibit 1.

28. Barlow hand-cuffed Plaintiff too tightly. Plaintiff told Barlow told her "I do not bend so well" and that the cuffs were painful and too tight. Exhibit 1. Barlow responded: "Chill out, they would not hurt so much." Exhibit 1. As a result, Plaintiff's wrists were seriously injured.

29. During the course of and/or after Plaintiff's arrest, defendant Barlow emptied Plaintiff's pockets and placed all the contents on the hood of Plaintiff's car. None of these items were in any way related to the alleged crimes for which Barlow arrested him. Nevertheless, she refused Plaintiff's request that his wife be allowed to collect them.

30. Afterward, defendant Russell arrived, re-cuffed Plaintiff, and while stuffing Plaintiff into the back of his patrol car forced Plaintiff's head down with such tremendous force that it severely injured Plaintiff's cervical spine. Russell did not do this in order to protect Plaintiff's head but as a violent show of authority and intimidation.

31. The defendants caused Plaintiff to be arrested, incarcerated, and charged with knowingly false criminal charges for resisting and obstructing a law enforcement officer and false imprisonment, without probable cause and in retaliation for Plaintiff being allegedly "unreasonable" in his lawful refusal to grant the defendants' close personal friend, Christine Nelson, permission to trespass on his property.

32. Defendants Barlow's and Russell's use of force in arresting Plaintiff was unreasonable and excessive.

33. The criminal charges against Plaintiff were eventually dismissed for lack of evidence.

34. The defendants' unlawful conduct as described above was performed in concert, and/or pursuant to a conspiracy, with Christine Nelson to facilitate her continuing and repeated unlawful trespass on Plaintiff's property.

35. The defendants' unlawful conduct as described above was performed under color of state law in clear violation of Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Idaho law.

36. The Clearwater County defendants' unlawful conduct as described above was proximately caused, in part, by defendant Clearwater County's adoption, implementation, and/or enforcement of official policy of Clearwater County, and/or its failure to properly train, control, and/or supervise their deputies regarding use of force and reliance upon personal friendships rather than upon probable cause, evidence, law, or accepted law enforcement practices.

37. Defendant Russell's unlawful conduct as described above was proximately caused, in part, by defendant City of Orofino's adoption, implementation, and/or enforcement of official City policy and/or its failure to properly train, supervise and/or control its officers regarding their use of force.

38. As a direct and proximate result of the defendants' unlawful conduct as alleged above, Plaintiff has incurred special and consequential damages in the form of thousands of dollars in posting a bond and hiring legal counsel to obtain a dismissal of the false charges against him, and in past and future medical and other healthcare expenses for treatment of his physical, mental and emotional injuries, in amounts to be proven at trial.

39. As a direct and proximate result of the defendants' unlawful conduct as alleged above, Plaintiff has suffered severe and irreparable physical, mental, and emotional injuries, pain, suffering, distress, anguish, embarrassment and humiliation, in amounts to be proven at trial.

40. Plaintiff timely filed a Notice of Tort Claim as required by the ITCA.

41. Plaintiff timely posted a bond as required by Idaho Code § 6-610.

42. The individual defendants' unlawful acts and omissions as alleged above were committed with malice within the meaning of Idaho Code § 6-904.

43. The defendants' unlawful misconduct as alleged above was malicious, wanton, oppressive, and/or in reckless disregard of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages under 42 U.S.C. §1983.

44. The defendants knew or should have known that their actions as alleged above not only created an unreasonable risk of harm to Plaintiffs and others, but involved a high degree of probability that such harm would actually result. Consequently, the defendants' actions constitute "willful or reckless misconduct" within the meaning of Idaho Code § 6-1603(4)(a).

45. The defendants' conduct as alleged above was oppressive, fraudulent, malicious or outrageous, within the meaning of Idaho Code § 6-1604(a).

46. Plaintiff is entitled to recover his reasonable attorney fees incurred in this matter pursuant to 28 U.S.C. §1988.

47. Plaintiff is entitled to an award of prejudgment interest on the special damages he suffered at the defendants' hands from the time he incurred or suffered them until judgment is entered in this matter, pursuant to Idaho Code §28-22-104, at the statutory rate of twelve percent (12%) per annum.

48. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff prays for the following judgment and relief against the defendants, jointly and severally, as follows:

1. For a judicial declaration that the defendants' act, omissions, and policies were in violation of Plaintiff's rights secured by the United States Constitution as alleged above.

2. For an award of special damages as alleged above, in such amounts to be proven at trial.

3. For an award of general and consequential damages as alleged above, in such amounts to be proven at trial.

4. For an award of punitive damages in such amounts to be proven at trial.

5. For an award of Plaintiff's reasonable attorney fees.

6. For an award of prejudgment interest.

7. For costs incurred in prosecuting this action.

8. For such further relief as this Court deems equitable and just.

DATED this 21st day of July, 2020.

WOOD LAW GROUP, PC

By: /s/ _____
T. Jason Wood, Esq.

# EXHIBIT 1

# CLEARWATER COUNTY SHERIFF'S OFFICE

**Chris Goetz,** *Sheriff*
P.O. Box 724, 150 Michigan Ave., Orofino, ID 83544
Phone: (208) 476-4521  Fax: (208) 476-7835



Case Narrative

Printed on July 30, 2018

## Primary Report By Amanda Barlow, 07/30/18 10:37
Case #P2018-00764
Typed By Amanda Barlow

On July 30, 2018 at 0734 hours I was dispatched to Legacy Drive for a disorderly call for service. Dispatch advised me Christine Nelson called to report her neighbor, Arthur Baker, would not let her out of her driveway. I was advised Todd Perry was on scene as well. I responded to the call for service from the Sheriff's Office.

Upon my arrival I saw Todd Perry's truck parked in front of Arthur Bakers vehicle both in the intersection of Legacy Drive and Harmony Heights Loop Road. I saw Darrel Gray sitting on a 4-wheeler in Harmony Heights Loop Road. As I exited my vehicle I instructed for Darrell Gray to leave, which he did. I continued to approach and I saw the gate across Legacy Drive was closed. I saw Arthur Baker standing in front of Chris Nelson's work truck and Todd Perry was standing next to Nelson's truck. Chris Nelson was sitting inside her truck. I saw a gray car parked behind Nelson's work truck in the middle of the road. Arthur Baker was using his cell phone to video tape Chris Nelson and Todd Perry. Arthur Baker's wife, Dianne, was also on scene standing on Harmony Heights Loop Road.

I approached and called for Mr. Baker to come to my location near the closed gate. He approached me still video taping with his phone and said, "This is Mandy Barlow with the Sheriff's Office". I asked Baker what was going on. Baker told me he put the notice on the gate that permission was revoked and Nelson ripped it off. I saw a white piece of paper lying on the ground near the gate so I picked it up and looked at it briefly. The heading of the letter said, GRANT OF PERMISSION FOR CHRIS NELSON TO CROSS OUR LAND AS PER RECORD OF SURVEY INSTRUMENT #228614. The bold section of the letter was highlighted and above it hand written in red ink said, "Permission Revolked". Also in hand written red ink was the work Attention above Chris Nelson's name that was circled in red ink. The letter was dated January 6, 2017. The letter was Clearwater County recorded on January 9, 2017.

Baker continued telling me he told Nelson and her attorney that permission for her to use the road had been revoked about a year and a half ago when he acquired the property. Baker told me he went there this morning because he had not locked the gate but she would leave and leave the gate open. Baker told me he went there this morning to talk to her about it and tell her that her easement is at another location. Baker told me her easement was up the road from us near a mailbox. Baker told me when she cut the gate he asked her if she wanted that easement if that was the one she was declaring and told her she could not use the main driveway. Baker told Nelson the other night when she came in. Baker told me Nelson refused to get out of he and his wife's way and she had a can of mace and was aiming it at him. Baker told me he called in and Todd Perry also arrived and parked in front of him. According to Baker, Todd Perry refused to leave until he saw that Nelson was out of the driveway. Baker told Perry to tell Nelson to leave on the road she has an easement on. Baker told me he has this encounter with Todd Perry on film and Baker told Perry he was trespassing and to leave. Baker told me Perry refused to leave. Baker told me Perry was guilty of criminal trespass and civil trespass. Refer to case number 2018-00649 for details on the event.

I told Baker he could not keep Perry and Nelson hostage the way he was. Baker got upset and raised his voice and said, "I am not keeping anyone hostage". I told him he was and he said, "What are you talking about, this is my driveway and I got a gate on it". I told Baker that Nelson and Perry were trying to go to work. Dianne Baker stepped up with Art and told him to back down. I told Baker to calm down. Dianne Baker told me that Nelson can get out another way and that was the way she always used. I told both of them I did not care about the other access road and it was ridiculous. Dianne asked me if I was a personal friend of Nelson's. I told her I was and again told them this was



Made by ZUERCHER    Case None    Page 1 of 3

ridiculous. Dianne told me that was entering into this. Dianne asked me to think about this for a few minutes and asked why Nelson could not use the other access road. I told Dianne I had no idea. She told me to go ask Nelson. I told them both to calm down and told them they were getting worked up over a driveway. Art replied, "Exactly, it's my driveway, its not hers". I told Baker she had access and he yelled and said, "She does not have access to this". Baker told me I could not be the judge and jury. I told Baker to wait and chill out while I went and spoke with Nelson and Perry.

I approached Nelson and Perry. Nelson was visibly upset, crying, and shaking. She told me Art Baker had her blocked in and he kept shutting the gate. Nelson told me she did not need permission because she has a legal easement. Nelson told me she called her lawyer and her lawyer told her this was beyond civil now and she wanted him arrested for disturbing the peace and disorderly conduct. Nelson also wanted Baker arrested for threatening her. I asked how he threatened her and she told me it was because she could not leave. Nelson pointed out that Dianne Baker's car was now blocking her from behind even though she came afterwords and she could not go anywhere. While I was talking with Nelson Art Baker got a chain and padlock from his truck and locked the gate closed. Nelson told me Art Baker wanted her to use the other gate (access road) but she said it was chained and padlocked too. Nelson told me she had to cut that fence. Nelson told me she was going to be late for work now. Nelson was crying and I told her it was okay. She told me it was not okay. Nelson was crying so hard she could hardly talk. Nelson told me she has to come home to this too. I told her I knew this and I was sorry. I asked Nelson if the other access road gate was closed right now. She told me she did notice today but she had cut the wire previously so she could get through with her horse. She told me the other road is rough and her truck bottom's out. She told me the road we were on was her easement.

I asked Perry how he ended up on scene. He told me he was headed to work and saw Baker had her blocked in. Perry told me Baker is a bully and he and Baker did argue a bit. Perry told me Baker told him he was blocking him now and Perry told him he was not even trying to leave. Perry told me Baker was also accusing him of trespassing. I instructed Perry to leave in his truck and he did so. I walked Perry back to his truck and as we approached Baker he said to Perry, "Did you admit to her that you were refusing to leave my property"? Todd told him no and I told Baker I would be right back. Perry asked me if I wanted to ask him questions. He told me Baker accused him of trespassing and to leave. Perry told me his hands were in his pockets most of the time and he cussed at him and called him a bully. Perry said he was driving by and he knew Baker was intimidating Nelson so he stopped to help her out. Perry told me he knew what was going on between them so he came to help her. Perry left the scene and told me he would be at work all day if I needed him.

Next I placed the letter from Baker in my vehicle that had been on the ground in my vehicle. I walked back to Baker and told him he was now not blocked in by Perry. I confronted him with the fact that he had now padlocked the gate shut with a chain. I asked him if the gate below was padlocked. I was told it was not and she had cut it. I told her I was aware of that. I told Baker my concern right now was that she could not get out right now and go to work. Baker told me she could. I asked Dianne if she could go now because the both of them had Nelson blocked in. Dianne told me she came after. Art told me he called Dianne to come because he was getting ganged up on. Dianne told me she would leave and walked back to her car and left the area.

Art Baker said, "She will have to leave out that other road". I said, "Art, come on". He told me he was not going to let her out. I told Art he needed to let her go and he told me he did not need to let her go because she could get out the other way. Baker told me he has driven up that road with his vehicle many times. I told Baker her vehicle was a two wheel drive and his was a four wheel drive. He argued with me and told me he drives his two wheel drive Hyundai up it. I asked Baker why we were arguing about this. Art told me it has to come to a point where if she can force her way through to use it then she can establish a prescriptive easement. Baker told me he has been letting Nelson come through by permission. I told him this was a civil issue. I told him what he was doing right now was criminal. Baker told me it was not. I told him it was and he was preventing her from going and coming at her own will. I told him Nelson was scared and it was criminal. Baker told me I was making a case out of something that isn't true. Baker told me Nelson could leave on the other road. I told him he needed to unlock it and let her go. I told Baker Nelson was going this way. Baker walked to his truck and told me he was going to show me. I asked him what he was going to show me. He told me he was going to drive around and show me. I raised my voice and said, "No you are going to

unlock this now or you are going to go to jail for resisting and obstructing. Baker stopped and turned around and faced me and said, "I can tell who your friends with". I asked him what he wanted to do, unlock it or go to jail. Baker then began to reach in his pocket and said he was going to get film of me. I then told him no, he was going to jail. I grabbed his right forearm and placed him in an arm bar and told him to turn around. Baker tried to give me the key to unlock the gate and I told him it was too late. Baker told me he was trying to get evidence. Baker began resisting me and I kept him in the arm bar and pushed him against his truck. Baker continued to resist and was trying to get something from his pocket. I told him he was going to get Tased and instructed him to put his hands behind his back. Next Baker told me he was trying to get his phone in his pocket so he would not drop it. I was finally able to get handcuffs on Baker and I told him I did not understand why we were doing this over property. Baker told me he would have unlocked that gate. I told him now I would. I told him it was too late. Baker told me he did not bend so well and I told him to chill out and it would not hurt so much. Baker said to me, "You know you don't have to do this Mandy". I told him he didn't either and asked him why he had to fight with me. He told me he was not fighting and all he wanted to do was to get evidence of video on me. I told him all he had to do was open a gate and let someone go to work. He told me he would have as soon as he got his camera out to film it. I told him now he was being charged criminally. I told him I thought we could just all get along and open the gate so she could go. Baker continued to argue with me about Nelson using the other road.

I read Baker his Miranda Warning from a prepared card and removed items from his pockets and put them on the hood of my vehicle. Dianne Baker came back to my location and said, "So much for your rights huh"? Baker told his wife that I insisted he open the gate and he asked that I let him film me giving him that order and I told him nope your under arrest. Baker then told his wife I told him he was resisting arrest and he claimed he was putting his phone in his pocket. Baker told his wife he never resisted me at all. Dianne told him this was not the first time they have dealt with law enforcement that has not been totally upright. I told Dianne if she continued she could come to. She said, "I'm under arrest to huh"? I told her she was not but if she continued I would deal with her as well. Both Bakers wanted to argue with me about access roads. Dianne told her husband that he sees where I stood. Dianne said they would have to get someone that is more fair that does not have friendship here. Dianne told her husband to let it go. Art told his wife to take his personal belongings from my hood and I told her she could not since it was on him when I arrested him. Dianne said to me, "You do realize you are making things harder and harder for Chris don't you"? Dianne said, "We have half of her water and she runs out of water every August. The water she has been using all of, we use half of that water". Dianne said, "We have never taken it, now what do you think is going to happen"? Dianne said, "We will take half of that water and she will be out at the first of the year". Dianne told me Nelson is on their property all the time to get to her arena. She told me Nelson has to go on their property to get to her arena. Dianne said to me, "If you were her friend you would tell her why don't you use the other way, go ahead and go up that driveway and be friends with these people, they have the upper hand". Dianne told me that would be the smart thing if I was her friend. I told her I stay completely neutral with this. I told her friends or no friends you can not block someone from going to work. Baker told me if I wanted to police department to look bad I was sure going about it the right way. I told them we would argue this in court.

When Baker settled down I was able to adjust the handcuffs so they were not causing him pain. Officer Russell arrived on scene and we took the handcuffs off and put Officer Russell's handcuffs on Baker. Baker was transported to the Sheriff's Office by Officer Russell. Dianne left the scene and I took photographs of the area.

Dianne Baker was later contacted and asked to respond back to move the truck from the driveway. Dianne did come back and moved the truck. I unlocked the gate with the key I found on the ground that was labeled, "top".

Baker was arrested for resisting an obstructing an officer and false imprisonment.