Bentley G. Stromberg (ISB No. 3737)
Andrew G. Pluskal (ISB No. 10039)
CLEMENTS, BROWN & McNICHOLS, P.A.
Attorneys at Law
321 13th Street, Post Office Box 1510
Lewiston, Idaho 83501
(208) 743-6538
(208) 746-0753 (Facsimile)

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARTHUR BAKER,                 ) | Case No: 2:20-cv-00376 |
|                     ) | |
|         Plaintiff,       ) | MEMORANDUM IN SUPPORT |
| v.                      ) | DEFENDANTS' MOTION FOR |
|                     ) | SUMMARY JUDGMENT |
| CLEARWATER COUNTY, CITY OF  ) | |
| OROFINO, AMANDA BARLOW, MATT ) | |
| RUSSELL, and CHRIS GOETZ,    ) | |
|                     ) | |
|        Defendants.     ) | |

Arthur Baker ("Plaintiff") was arrested by Detective Amanda Barlow ("Barlow") of the Clearwater County Sheriff's Office ("CCSO"). The charges were eventually dismissed, and Plaintiff subsequently filed this lawsuit alleging that his civil rights were violated by Barlow, the County, the County Sheriff ("Goetz"), an assisting City of Orofino police officer and the City. As discussed below, summary judgment should be granted on all of Plaintiff's claims.

## I. BACKGROUND

On July 30, 2018 the CCSO received a call from Christine Nelson ("Nelson"), who reported that Plaintiff, her neighbor, was preventing her from leaving her property. (Declaration of Counsel, Ex. C at 30:22-31:31:8). Barlow responded to the call. (*Id.*, at 31:1-31:8).

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT        –1–

Barlow knew both Plaintiff and Nelson prior to July 30, 2018.  She knew Plaintiff because she had previously questioned him about a suspected theft of a game camera reported by another of Plaintiff's neighbors, and regarding a complaint by Nelson concerning the well that she and Plaintiff shared.  (*Id*., at 23:18-24:15, 24:19-25:14).  Barlow found both of those complaints to be unfounded.  (*Id*., at 23:18-24:15, 24:19-25:14).  Barlow knew Nelson because the two of them had been acquainted for 8-10 years and periodically rode horses together.  (*Id*., at 18:16-18:22, 20:6-20:21).

Barlow was also familiar with the layout of Plaintiff's and Nelson's properties.  In particular, she knew that when she had accessed Nelson's property in the past, she had done so via Legacy Drive, off of Harmony Heights Road.  (*Id*., at 33:13-33:23).  She was also aware that Nelson typically used this road to access and exit her property, and that Plaintiff's home is located a short way down Legacy Drive from this intersection.  (*Id*., at 31:9-32:14).  Barlow also knew that an unmaintained "4-wheeler" road leaves Harmony Heights further up past the intersection.  (*Id*., at 32:15-32:18, 34:17-35:11, 43:18-44:4).  This road (hereafter the "cutoff" road) ends on Legacy Drive about 100 yards away from the intersection.  (*Id*., at 46:5-46:24).

Barlow was also aware that there was an ongoing dispute between Plaintiff and Nelson.  (*Id*., at 22:6-23:1).  Nelson had complained to law enforcement in June of 2018 that Plaintiff had tried to poison a well that the two of them shared; Barlow investigated that complaint, and as noted above, concluded that it was unfounded.  (*Id*., at 24:19-25:14).  Plaintiff had also reported that Nelson had cut a wire gate Plaintiff had placed across the "cutoff" road, and Barlow was aware that this complaint had been investigated by another CCSO deputy.  (*Id*., at 25:19-26:4).

When Barlow arrived on scene, she could see that a green truck, which she knew to be Plaintiff's, was parked in front of a closed gate, and was blocking any vehicles from entering or exiting Legacy Drive onto Harmony Heights Drive (the "Legacy Drive gate").  (*Id.*, at 37:21-38:4; Ex. A at 1.271-1.275).  Barlow could also see that a white pickup, which she knew to be Nelson's, was parked on the other side of the gate, with another vehicle (which she later determined belonged to Diane Baker, Plaintiff's wife), parked directly behind Nelson's pickup. (Declaration of Counsel, Ex. C at 38:7-38:16, 51:24-52:9; Ex. A at 1.279, 1.282).

Barlow questioned both Plaintiff and Nelson.[1]  Plaintiff asserted that Nelson no longer had permission to access her property through the "Legacy Drive gate."  (Declaration of Counsel, Ex. C at 39:2-39:6).  Instead, according to Plaintiff, Nelson only had an easement granting her a right to access the public roadway (*i.e.* Harmony Heights Drive) via the "cutoff" road.  (*Id.*, at 42:5-42:17).  Nelson, on the other hand, asserted that she believed that she had a right to access or exit her property as she always had, and that Plaintiff and Plaintiff's wife were preventing her from doing so.  (*Id.*, at 50:5-50:12).  Based on those conversations, Barlow determined that the issue was a civil matter.  (*Id.*, at 38:18-38:24).

While Barlow was speaking with Nelson, Barlow could see that Plaintiff had locked the gate.  (*Id.*, at 101:24-102:6).  Because of where Plaintiff's vehicle and Diane Baker's vehicles were positioned, Barlow was concerned that Nelson could not actually exit through either the gate <u>or</u> the cutoff road.  (*Id.*, at 66:3-66:7).  Barlow asked Diane Baker to move her vehicle, and

---

[1]  Barlow was not wearing a bodycam, but was wearing an audio recording device, which she used to record this encounter.  (Dec. of Counsel, Ex. C at 25:1-25:12, 29:25-30:10; Exs. E & F).

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT          –3–

she agreed to do so, stating that she was only there because her husband had told her to be.  (*Id.*, at 66:7-66:17).

Based on her familiarity with the "cutoff" road, Barlow was not sure that Nelson would be able to safely exit that way even if Diane Baker moved her vehicle.  (*Id.*, at 60:2-60:10). Barlow told Plaintiff that he needed to let Nelson go, and directed him to open the gate and move his truck and let Nelson leave.  (*Id.*, at 72:12-72:15, 88:15-89:2).  Plaintiff refused.  Barlow then gave Plaintiff a choice:  open the gate and move his truck, or be arrested for false imprisonment and for impeding or obstructing an officer.  (*Id.*, at 73:13-73:17).  Plaintiff again refused. Barlow then announced that Plaintiff was going to jail, and was being placed under arrest.  (*Id.*, at 74:12-74:14).

As she did so, she saw Plaintiff attempt to reach into his pocket.  (*Id.*, at 74:9-74:12). Fearing that Plaintiff might be reaching for a weapon, Barlow told him to give her his hand, grabbed his wrist, placed Plaintiff in an arm bar, and pressed him up against the nearest vehicle (Plaintiff's truck) so she could get handcuffs on him.  (*Id.*, at 74:12-75:4, 78:1-78:11, 96:3-96:15).  Plaintiff continued to resist Barlow's attempts to place him in handcuffs by trying to slide up the side of the truck away from Barlow, and by refusing to put his hand behind his back so Barlow could get a handcuff on it.  (*Id.*, at 78:1-78:11, 79:12-79:14).  Barlow also mentioned that she would have to tase Plaintiff if he didn't stop resisting, but she was eventually able to get handcuffs on without needing to use a taser.  (*Id.*, at 78:1-78:11).

Plaintiff complained that the handcuffs were too tight.  (*Id.*, at 92:7-92:12).  Barlow loosened them, but did not do so immediately.  This was because Barlow was the only officer present, and "and when you put the key in to loosen it and you have no help and he was already

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT                          –4–

resisting me and not listening or doing what I was asking him to do, he could have pulled out of the handcuff and hurt me with it." (*Id.*, at 95:5-95:11).  Once Plaintiff had calmed down, Barlow had called the matter into dispatch, and backup was on the way, Barlow unlocked and loosened Plaintiff's handcuffs.  (Declaration of Counsel, Ex. C at 104:15-105:3; Ex. E, at minute 23:40-24:35).   Approximately 8 minutes elapsed between when Plaintiff complained about the handcuffs and when Barlow loosened them.  (Declaration of Counsel, Ex. C at 104:15-105:10; Ex. E, at minute 16:00-24:35).

City of Orofino Police Officer Matt Russell arrived on scene soon thereafter to assist and transport Plaintiff to jail for booking.  (Declaration of Counsel, Ex. C at 105:4-105:10; Ex. E, at minute 26:25-26:35).   Russell was wearing a bodycam, and his encounter with Plaintiff was recorded.   (Declaration of Counsel, Ex. G).   Russell placed Plaintiff in a different set of handcuffs, and helped Plaintiff into his patrol vehicle, which is an extended cab pickup. (Declaration of Counsel, Ex. C at 105:6-105:7, 105:13-105:19; Ex. G).   Plaintiff asserts that Russell pushed down on his head as he was getting into the vehicle, but that assertion is contradicted by the bodycam video.

The CCSO does not prohibit deputies from responding to calls for service involving friends or family members.  (Declaration of Counsel, Ex. D at 17:5-17:21).   Deputies with potential conflicts are not supposed to investigate such calls, but may do so as long as they have a second deputy or supervisor do a follow up and review the incident.  (Declaration of Counsel, Ex. D at 19:5-19:7).  This procedure was followed here:  Mitch Jared, Barlow's supervisor, responded to assist Barlow on July 30, 2018, and verified the factual basis of Plaintiff's arrest and the citations issued to him.  (Declaration of Counsel, Ex. A at 1.005; Ex. D at 20:15-20:25).

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT                    –5–

Plaintiff was issued citations for false imprisonment and resisting or obstructing an officer. (Declaration of Counsel, Ex. A at 1.102). A judge thereafter found probable cause to support the arrest and citations. (*Id.*, at 1.166). Both charges were eventually dismissed on motion of the prosecuting attorney. (*Id.*, at 1.170, 1.103).

On January 23, 2019 Plaintiff presented a notice of tort claim to the Clearwater County Sheriff's Department and to the office of the Clearwater County Commissioners. (Declaration of Counsel, Ex. B at Baker 0172-0175). On July 28, 2020 Plaintiff filed this lawsuit. (Dkt. 1).

## II.  ARGUMENT

### A.  No triable claims under federal law can be shown here.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law." *Larson v. Payne*, No. 2:18-cv-00375-CWD, 2019 WL 826448, *4 (D. Idaho February 21, 2019). Defendants admit that they were acting under color of state law regarding this incident. However, Plaintiff cannot demonstrate that his rights under federal law—clearly established or otherwise—were violated.

**1.    Plaintiff's arrest was supported by probable cause.**

Plaintiff asserts that Detective Barlow and Officer Russell violated Plaintiff's Fourth Amendment rights when they detained, arrested and cited him for false imprisonment and resisting or obstructing an officer. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). "In other

words, probable cause is a defense to claims of unlawful arrests." *Law v. City of Post Falls*, 772 F. Supp. 2d 1283, 1291 (D. Idaho 2011).

"Probable cause exists when there is a fair probability or substantial chance of criminal activity." *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (quoting *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001)) (internal quotation marks omitted). "It is well-settled that 'the determination of probable cause is based upon the totality of the circumstances known to the officers . . .'" *Id.* (quoting *Bishop*, 264 F.3d at 924). Further, courts "do not evaluate probable cause in hindsight," *Florida v. Harris*, 133 S. Ct. 1050, 1059 (2013), and "[t]he determination of probable cause should not be confused with the higher standard required for a conviction." *Dunham v. Kootenai County*, 690 F. Supp. 2d 1162, 1176 (D. Idaho 2010) (citation omitted); *see also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) ("The mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause.").

At the outset, it must be noted that at least one court <u>already has</u> determined that there was probable cause to support Plaintiff's arrest and the citations issued to him.[2] (Declaration of Counsel, Ex. A at 1.166). Those charges were eventually dismissed, but not due to a judicial finding or determination that probable cause was lacking; instead, those charges were dismissed on motion of the prosecuting attorney. (*Id.*, 1.170, 1.103).

More significantly though, the judge's probable cause finding was supported by the facts Detective Barlow confronted, which were easily "sufficient to warrant a prudent [person] in

---

[2]  A probable cause finding also presents an "absolute defense" to a malicious prosecution claim. *Law v. City of Post Falls*, 772 F. Supp. 2d 1283, 1291 (D. Idaho 2011); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT          –7–

believing that" Plaintiff had violated both I.C. § 18-2901 and I.C. § 18-705.  *Blankenhorn v. City of Orange*, 485 F. 3d 463, 471 (9th Cir. 2007).

A violation of I.C. § 18-2901 occurs whenever a suspect "violate[s] the right of [name of victim] to come and go or to stay when or where [name of victim] wanted."  ICJI 1233 (second and third brackets in original); *State v. Joy*, 304 P.3d 276, 283 (Idaho 2013) ("False imprisonment requires only an (1) unlawful (2) violation of another's personal liberty.").

Barlow clearly confronted facts that demonstrated these elements.  When Barlow arrived at the Harmony Heights/Legacy Drive intersection, she could see a green truck, which she knew to be Plaintiff's, parked in front of the closed Legacy Drive gate.  (Declaration of Counsel, Ex. C at 37:21-38:4; 1.271-1.275).  Barlow could also see that a white pickup, which she knew to be Nelson's, was parked on the other side of the gate, with another vehicle (which she later learned belonged to Plaintiff's wife), parked directly behind Nelson's pickup.  (*Id.*, at 38:7-38:16, 51:24-52:9; Ex. A at 1.279, 1.282).  Plaintiff asserts that Nelson should have used the "cutoff" road, but when Barlow arrived (and indeed for the most of the encounter that followed),[3] Nelson could not actually do so because Plaintiff and his wife's vehicles had blocked her in on both sides.  A reasonable person confronting this scenario could easily conclude that Plaintiff and his wife were deliberately preventing Nelson from coming or going as she pleased, whether through the Legacy Drive gate or up the "cutoff" road.  Nothing more is required to demonstrate a violation of I.C. § 18-2901.

Although the court need not go any further to find probable cause, Detective Barlow also had a probable cause  to arrest Plaintiff for resisting or obstructing Barlow in the exercise of her

---

[3]  Diane Baker eventually agreed to move her vehicle, (Dec. of Counsel, Ex. C at 66:7-66:17), but before she did so, a violation of I.C. § 18-2901 had been observed.  No case holds that I.C. § 18-2901 is not violated merely because the imprisonment ends at the request of law enforcement.

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT          –8–

duties, in violation of I.C. § 18-705.  *See State v. Bishop*, 203 P.3d 1203, 1215 (Idaho 2009) ("Three elements must be satisfied in order to find a violation of [§ 18-705]: '(1) the person who was resisted, delayed or obstructed was a law enforcement officer; (2) the defendant knew that the person was an officer; and (3) the defendant also knew at the time of the resistance that the officer was attempting to perform some official act or duty.'").

Neither of the first two elements can be disputed:  Barlow was (and is) a law enforcement officer, and Plaintiff knew it.  As for the third, it cannot be disputed that Barlow was attempting to discharge her duties, or that Plaintiff was (at minimum) uncooperative.  Again, when Barlow arrived on scene, she walked into the middle of a tense standoff, and with Nelson plainly unable to leave as a result of Plaintiff's (and his wife's) actions.  (Declaration of Counsel, Ex. C at 37:2-38:19; Ex. A at 1.271-1.275, 1.279, 1.282).  Barlow spoke with both Plaintiff and with Nelson, and determined—correctly—that the issue was a civil matter involving disputed property.  (Declaration of Counsel, Ex. C at 38:18-38:24).

Barlow was also aware, based both on her conversations with Nelson and her own prior visits to Nelson's and Plaintiff's properties, that the "cutoff" road Plaintiff wanted Nelson to use was an unmaintained "4-wheeler" road which Nelson's two wheel drive pickup might not be able to safely traverse.  (*Id.* at 60:2-60:10).  Rather than prolong the standoff, Barlow told Plaintiff that he could not hold Nelson any further, and directed him to open the gate, move his truck and let Nelson out.  (*Id.*, at 72:12-72:15, 88:15-89:2).  Plaintiff refused.  (*Id.*, at 68:11-68:16).  Barlow gave Plaintiff a final chance to either open the gate and move his truck, or be arrested for the false imprisonment she had observed, and for impeding Barlow's attempts to resolve the situation.  (*Id.*, at 73:13-73:17).  Plaintiff again refused.  At that point, Barlow announced that Plaintiff was being placed under arrest and was going to jail.  (*Id.*, at 74:12-74:14).

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT            –9–

A prudent person confronting these facts could certainly conclude that Plaintiff's actions—which prolonged Nelson's detention and interfered with Barlow's attempts to safely resolve or investigate the incident—were intended to obstruct Deputy Barlow's performance of her official duties in violation of I.C. § 18-705. *Blankenhorn*, 485 F. 3d at 471. Probable cause can be found on this basis as well.

Moreover, even if the court were persuaded that probable cause was lacking here for any reason, Barlow and Russell would be entitled to qualified immunity. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.") (citation omitted). For these purposes, "'[c]learly established' means that existing law 'placed the constitutionality of the officer's conduct beyond debate.'" *West v. City of Caldwell*, 931 F.3d 978, 983 (9th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)); *see also Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (party opposing immunity "bears the burden of showing that the right at issue was clearly established").

In the absence of any then-existing case holding that I.C. § 18-705 and I.C. § 18-2901 cannot be violated in circumstances similar to these—none exist a far as Defendants are aware— Barlow could not possibly have received "fair warning" that Plaintiff's arrest would violate the Fourth Amendment. *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019); *see also Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). If Barlow was mistaken, her mistake was reasonable in these circumstances, *see Hunter*, 502 U.S. at 227, and she is entitled to qualified immunity against Plaintiff's false arrest claims.

Russell, who merely relied on Barlow's stated reasons for Plaintiff's arrest and transported Plaintiff to jail, cannot be found liable for false arrest either. "[W]here an officer has

an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous." *Torres v. City of L.A.*, 548 F.3d 1197, 1212 (9th Cir. 2008).  Russell's reliance on Barlow probable cause determination was reasonable because when Russell arrived, objectively verifiable corroborating evidence (*i.e.* that Plaintiff's vehicle was still blocking the gate and Nelson's vehicle) supported that determination.

**2.     No excessive force can be demonstrated here.**

Plaintiff alleges that excessive force was used in essentially three ways:  (i) Barlow improperly used an arm bar on him; (ii) Barlow and/or Russell deliberately placed him in handcuffs that were too tight; and (iii) Russell pushed down on his head as he was being loaded into Russell's vehicle for transport.  None of those allegations are sufficient to establish excessive force.

Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances.  *Graham v. Connor*, 490 U.S. 386, 397 (1989); *White v. Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986).  Determining whether force used in making an arrest is excessive or reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396; *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam) ("Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue . . .").  The force

used here was appropriate because Plaintiff was not compliant, and it was reasonably necessary to get Plaintiff handcuffed and under control until backup could arrive.

As for the arm bar, this occurred after Plaintiff tried to reach into his pocket, a fact he nowhere disputes.  Barlow believed that Plaintiff could have been trying to retrieve a weapon of one sort or another, (Declaration of Counsel, Ex. C at 74:12-75:4, 78:1-78:11, 96:3-96:15), and made a "split-second judgment[] . . . about the amount of force that [was] necessary" to ensure her own safety.  *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014).  Plaintiff claims that he was merely trying to get out his phone so he could video Barlow's actions or retrieve his keys, but Barlow had no way to know that at the time, and this court should not substitute hindsight for an officer's heat of the moment assessment of the force needed to get Plaintiff under control and into handcuffs.  This is particularly true considering that there are numerous cases holding that arm bars and even forceful "takedowns" may be appropriate when an officer is unsure whether a suspect is armed or poses a threat.  *See Rosenberger v. Kootenai Sheriff's Dept.*, 103 P.3d 466, 473 (Idaho 2004) (use of an arm bar appropriate because, among other things, the officers "did not know the full extent of the threat Rosenberger posed"); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 502 (2019) (per curiam)

Even still, Plaintiff continued to resist Barlow's attempts to place him in handcuffs, and did so by trying to slide up the side of the vehicle he was pressed against away from Barlow, and by refusing to put his hand behind his back so Barlow could get a handcuff on it.  (Declaration of Counsel, Ex. C at 78:1-78:11, 79:12-79:14).

Barlow was eventually able to get Plaintiff in handcuffs, but Plaintiff soon complained that the handcuffs were too tight.  Under existing case law an officer may not "place and keep [a person] in handcuffs that were so tight that they caused . . . unnecessary pain," *Meredith v.*

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT            –12–

*Erath*, 342 F.3d 1057, 1061, 1063–64 (9th Cir. 2003) (emphasis added).  However, that is not what occurred here because Barlow loosed the handcuffs mere minutes after Plaintiff complained they were too tight.  (Declaration of Counsel, Ex. C at 104:15-105:10).  She did not do so immediately, but the delay is easily explained:  Barlow, who was the only officer on scene at that point, believed that it would not be safe to unlock the cuffs to loosen them until she knew that backup was on the way and Plaintiff had calmed down.  (*Id.*, at 95:5-95:11, 104:15-105:3).  Again, this court should not second guess actions that an officer, in the heat of the moment, reasonably believed were necessary to ensure her own safety.  *Plumhoff*, 572 U.S. at 775.

Finally, Plaintiff asserts that Russell used excessive force either when he placed Plaintiff in handcuffs that were too tight, or when he loaded Plaintiff into the patrol vehicle.  The handcuffing assertion is meritless.  As demonstrated by the bodycam video, after Russell placed the handcuffs on, Plaintiff complained that they were too tight.  Russell then checked them, confirmed that he could get his fingers between the cuffs and Plaintiff's wrists, and determined that if he loosened them any further Plaintiff might be able to work a hand free.  Again, no case that Defendants are aware of establishes that an officer must loosen handcuffs to the point of uselessness merely because they may be uncomfortable.  If excessive force was used here, Officer Russell is clearly entitled to qualified immunity.  *See Kisela*, 138 S.Ct. at 1152

As for the other allegation, *i.e.* that Russell pushed down on Plaintiff's head, this assertion is flatly contradicted by the bodycam video.  (Declaration of Counsel, Ex. G).  And even if this action occurred (and was for some reason not captured by the bodycam), it is difficult to imagine how this could possibly support an excessive force claim.  Plaintiff is not alleging his head was slammed down against the patrol vehicle—only that Russell pushed down on it.  Plaintiff evidently believes that because he suffers from various back and neck issues, this

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT          –13–

touching was necessarily intended to injure or cause him pain.  Whether true or not though, Russell had no way to know this, and no reasonable jury would find that an officer who (at most) briefly touched the head of a suspect while helping the suspect into a patrol vehicle used unreasonable, excessive force.  No violation Fourth Amendment violation can be shown here, and even if one could be shown, Russell would be entitled to qualified immunity because his actions violated no case that "squarely governs" these circumstances.  *Kisela*, 138 S.Ct. at 1152.

**3.     No viable *Monell* claim exists here.**

Though a finding of vicarious liability is not available under § 1983, federal courts have long recognized that municipal liability can be established under that statute under the criteria laid out in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691-94 (1978).  Under *Monell* a plaintiff "must show that (1) she was deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation."  *Mabe v. San Bernardino County, Dept. of Soc. Serv*., 237 F. 3d 1101, 1109-1111 (9th Cir. 2001) (internal quotation marks omitted).  *Monell* liability cannot be established here for several reasons.

First, no constitutional violation occurred.  As demonstrated, Plaintiff's arrest was supported by probable cause and no excessive force was used.  A *Monell* claim fails to clear even the first hurdle.  Second, Plaintiff for the most part appears to suggest that the root cause of this incident was CCSO's conflicts policy or, more precisely, CCSO policies that allow law enforcement personnel to respond to incidents where close friends or family are involved.  The CCSO does not prohibit deputies from responding to calls for service involving friends or family members.  (Declaration of Counsel, Ex. D at 17:5-17:21).  Deputies with potential conflicts are not generally supposed to investigate such calls, but may do so as long as they have a second

deputy or supervisor do a follow up and review the responding officer's findings.  (Declaration of Counsel, Ex. D at 19:5-19:7).  This procedure was followed here; Mitch Jared, Detective Barlow's supervisor, responded to assist Detective Barlow on July 30, 2018, and verified the factual basis of Plaintiff's arrest and the citation issued to him.  (Declaration of Counsel, Ex. A at 1.005; Ex. D at 20:15-20:25).

This policy does not in any way amount to deliberate indifference to Plaintiff's—or indeed any other member of the public's—constitutional rights.  A municipality cannot be deliberately indifferent to problem it was not aware existed, and there is no evidence of any complaints or allegations (other than those made by Plaintiff) that CCSO personnel were improperly investigating or responding to incidents involving close personal acquaintances in reliance on this policy.  Moreover, this policy was not arbitrarily set, and instead reflects the practical constraints that any county with a small, dispersed population must operate under.  The CCSO does not prohibit deputies from responding to calls where a conflict might arise, largely because a policy along those lines would often prevent the closest available officer from responding when a call for service comes in.  (Declaration of Counsel, Ex. D at 17:5-17:21).  Plaintiff disagrees with the County's allocation of its limited officer resources, but disagreement over policy does not demonstrate deliberate indifference.

Liability can also be established under *Monell* where "[a] municipality's failure to train an employee who has caused a constitutional violation . . . amounts to deliberate indifference to the rights of persons with whom the employee comes into contact."  *Long v. County of Los Angeles*, 442 F. 3d 1178, 1186 (9th Cir. 2006).  Again the facts simply do not support such a finding.  Barlow has never been suspended or disciplined for a similar incident during her two decade long career with the CCSO.  (Declaration of Counsel, Ex. D at 16:15-16:17; Ex. A at

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT           –15–

3.084-85).  Nor is there evidence of any false arrest or excessive force complaints against her in the past, or any evidence that she had ever been accused of providing preferential treatment to friends or family.[4]   Likewise, there is no evidence that Officer Russell has any relevant disciplinary actions or complaints against him in his service history.  If either violated Plaintiff's constitutional rights—and again, neither did—there was no reason for their employers to suspect prior to July 30, 2018 that this was a likely outcome, or that additional training was needed.  No rational trier of fact would find deliberate indifference based on this record.

### B.  ITCA bars Plaintiff's state law claims.

**1.    Plaintiff has not complied with I.C. § 6-906.**

It is undisputed that Plaintiff filed a notice of tort claim on January 23, 2019. (Declaration of Counsel, Ex. B).  There are, however, several problems with this notice.

Under the plain terms of I.C. § 6-906 "[a]ll claims against a political subdivision . . . and all claims against an employee of a political subdivision for any act or omission of the employee with in the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later."  "Compliance with [ITCA]'s notice requirement is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate."  *Cobbley v. City of Challis*, 59 P.3d 959, 962 (Idaho 2002); *see also Ware v. City of Kendrick,* 487 P.3d 730, 736 (Idaho 2021) (parties seeking

---

[4]   Indeed, there is evidence here demonstrating that Barlow's relationship with Nelson did not render her incapable of fairly or impartially investigating Plaintiff.  Barlow, after all, had responded to a complaint by Nelson against Plaintiff previously and found no wrongdoing by Plaintiff.  (Declaration of Counsel, Ex. C at 23:18-24:15, 24:19-25:14).

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT           –16–

to rely on ITCA's "limited waiver by the State of its sovereign immunity" must strictly comply with I.C. § 6-906).

Under existing case law, a timely notice must be filed "with the appropriate governmental entity" to satisfy ITCA's notice and presentment provisions. *See Avila v. Wahlquist*, 890 P.2d 331, 334 (Idaho 1995); *see also Minnis v. City of Lewiston*, No. 3:12-cv-00348-EJL-CWD, 2014 WL 793561, *6 (D. Idaho January 28, 2014) ("Only if a claim is presented to the city . . . and then denied, may the claimant sue the city for money damages."). The "appropriate governmental entity" for Plaintiff's claims against the City of Orofino and Officer Russell is the City of Orofino. However, Plaintiff's notice of claim is not addressed to the City of Orofino, and is instead addressed to the Clearwater County Commissioners and to the Clearwater County Sheriff's Department. (Declaration of Counsel, Ex. B). There is no evidence that Plaintiff ever presented or filed this notice or any other notice of claim with the City of Orofino, as required by I.C. § 6-906. State law claims against the City and against Officer Russell must be dismissed for that reason. *Cobbley*, 138 Idaho at 157, 59 P.3d at 962.

As for Plaintiff's claims against the County and its employees they are barred because Plaintiff did not present or file notice of those claims with the "<u>the clerk or secretary of the political subdivision</u>," as required by I.C. § 6-906. Again, Plaintiff's notices are addressed to the Sheriff's Office, and to the County Commissioner' office. (Declaration of Counsel, Ex. B). Plaintiff may have believed that these notices would be forwarded to the appropriate recipient (*i.e.* the Clearwater County Clerk), but if so he was mistaken, and his attempt to file or present this claim in this manner does not satisfy I.C. § 6-906. *See Turner v. City of Lapwai*, 339 P.3d 544, 547 (Idaho 2014) (ITCA not satisfied where written notice was provided to city officials but was not "filed by Turner with the city clerk's office"). This court is bound to give full effect to

I.C. § 6-906's terms, as interpreted by controlling Idaho case law.  *In re County of Los Angeles*, 223 F.3d 990, 995 (9th 2000).  Plaintiff's state law claims against the Clearwater County defendants are barred by I.C. § 6-906 as well.

## 2. Plaintiff's state law claims against Sheriff Goetz, Deputy Barlow and Officer Russell are also barred by I.C. § 6-610.

I.C. § 6-610(2) requires the filing of a bond as a condition precedent to any action against a law enforcement officer, and also that the bond "shall [be] prepare[d] and file[d] with, and at the time of filing the complaint or petition in any such action."  Because a "literal application of [I.C. § 6-610] . . . requires a court to set the bond's value before the court gains jurisdiction over the case," the Idaho Supreme Court allows plaintiffs to satisfy this requirement by "filing with the court, <u>located in the county where the law enforcement officer performs his or her official duties</u>, a petition requesting an order fixing the amount of bond," and posting a bond in the amount set.  *Allied Bail Bonds, Inc. v. Cty. of Kootenai*, 258 P.3d 340, 345 (Idaho 2011) (emphasis added).[5]

Defendants do not dispute that Plaintiff posted a bond; however the bond Plaintiff posted does not satisfy I.C. § 6-610.  The problem is that Plaintiff did not post a bond with the District Court for the county where Sheriff Goetz, Deputy Barlow and Officer Russell indisputably perform their official duties, which is <u>Clearwater County</u>.  Instead, Plaintiff posted a bond with the District Court for <u>Bonneville County</u> prior to filing this lawsuit.  *See Baker vs. Clearwater County, et al*., Bonneville County Case No. CV10-20-4399.  No case allows a party to satisfy the

---

[5]   Courts in this district have sometimes allowed plaintiffs to satisfy I.C. § 6-610 "by simultaneously mov[ing] for a bond to be waived or set by the court when the complaint is filed."  *Hill v. County of Benewah*, No: 2:18-cv-00320-DCN, 2020 WL 1049905, *5 (D. Idaho March 4, 2020) (citation omitted).  Plaintiff has never requested a waiver or asked this court to set a bond for these purposes.

requirements of I.C. § 6-610 by requesting and posting a bond in whichever county they deem most convenient.  To the contrary, dismissal is required by existing and controlling state court case law where the requirements of I.C. § 6-610 are not met.  *Allied Bail Bonds, Inc*., 258 P.3d at 345; *see also Sparkes v. Idaho Fish and Game*, Docket No. 45133, 2018 WL 1529301, *3-4 (Idaho Ct. App. 2018) (unpublished); *Monson v. Boyd*, 348 P.2d 93, 94 (1959).  Plaintiff's state law claims against the individually named defendants are thus barred by I.C. § 6-610.

**3.      The state law claims are also barred by I.C. § 6-904(3).**

Plaintiff alleges that Defendants' conduct rises to the level of malice or criminal intent. However, regardless of whether malice or criminal intent can be demonstrated here—they cannot be for reasons discussed below—I.C. § 6-904(3) bars Plaintiff from bringing state law claims for "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process" against the County or the City  *See Hoffer v. City of Boise*, 257 P.3d 1226, 1228 (Idaho 2011) ("The plain language of . . . that section exempts governmental entities from liability for the torts it lists, whether or not there has been an allegation of malice or criminal intent.").

Plaintiff is not barred from bringing negligent hiring, training or supervision claims against the County (or Sheriff Goetz) or the City, but those claims fail for other reasons.  Under controlling Idaho case law, such claims are viable only where there is evidence demonstrating why those defendants "should have reasonably anticipated that those subject to their supervision would commit [a compensable tort.]"  *Kessler v. Barowsky*, 931 P.2d 641, 648 (Idaho 1997). There is no evidence here that would cause a reasonable person to suspect or anticipate that either Barlow or Russell were likely to violate the constitutional rights of suspects.  Neither has any history of complaints against them for incidents similar to this one, or of any disciplinary or corrective actions taken against them by their employers.  (Declaration of Counsel, Ex. D at

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT            –19–

16:15-16:17).  If either violated Plaintiff's rights—neither did—there was no way that their employers could (let alone should) reasonably have foreseen or anticipated this outcome.  No rational trier of fact would find the County or the City liable on this basis.

Also, and for reasons set forth previously, there is no evidence demonstrating that any of the individually named defendants violated Plaintiff's rights, much less that they did so maliciously, recklessly or otherwise.  Plaintiff may believe that Barlow was trying to in some way punish him to help out Nelson, but that belief is not in any way borne out by this record.  No reasonable jury would find malice or criminal intent here, and Plaintiff's state law claims against the individually named defendants are barred by I.C. § 6-904(3) for that reason as well.[6]

### III.  CONCLUSION

Defendants' motion for summary judgment should be granted.

DATED this 31st day of August 2021.

CLEMENTS, BROWN & McNICHOLS, P.A.


By   /s/ Bentley G. Stromberg
       BENTLEY G. STROMBERG
       Attorneys for Defendants

---

[6]  Any claims for alleged violations of the Idaho Constitution are meritless whether barred by ITCA or not.  *Hamell v. Idaho County*, No. 3:16-CV-00469-EJL, 2017 WL 2870080, *5 (D. Idaho July 5, 2017) ("This question has been clearly decided in this District.  [] There is no direct cause of action for violations of the Idaho Constitution.") (quotation marks omitted).

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT          –20–

<u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on this 31st day of August 2021, I filed the foregoing electronically through the CM/ECF system:

> T. Jason Wood
> WOOD LAW GROUP, PC
> 1488 Midway Avenue
> Idaho Falls, ID  83406
> jason@woodlaw.net

/s/ Bentley G. Stromberg

-----

Bentley G. Stromberg

MEMORANDUM IN SUPPORT
OF DEFNDANTS' MOTION FOR
SUMMARY JUDGMENT       –21–