T. Jason Wood, Esq.
WOOD LAW GROUP, PC
1488 Midway Avenue
Idaho Falls, ID 83406
Telephone: (208) 497-0400
Fax: (208) 932-4380
Email: jason@woodlaw.net
Idaho State Bar No. 5016

    *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARTHUR BAKER,<br><br>    Plaintiffs,<br><br>v.<br><br>CLEARWATER COUNTY, CITY OF OROFINO, AMANDA BARLOW, MATT RUSSELL, and CHRIS GOETZ,<br><br>    Defendants. | Case No. 2:20-cv-376-CWD<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS CLEARWATER COUNTY AND CHRIS GOETZ'S MOTION FOR SUMMARY JUDGMENT [DKT. 28]** |

    The defendants have all joined together in a single motion for summary judgment their distinct defenses and grounds alleged for judgment in their respective favor. In order that he not be deprived of a fair opportunity to submit a full response to each defendant's motion within the strictures of Local Rule 7.1, and in accordance therewith, Plaintiff Arthur Baker, by and through counsel of record, submits the following points and authorities in response and opposition to defendants Clearwater County (hereinafter "CCSO") and Chris Goetz's motion for summary judgment (Dkt. 28). He also submits a combined response to Clearwater County and Sheriff Chris Goetz's motion herewith.

# I.
## CLEARWATER COUNTY AND CHRIS GOETZ ARE LIABLE UNDER *MONELL.*

A municipality is liable for the violation of constitutional rights if its officer's conduct is directly attributable to the municipality's policy or custom, "even if the constitutional violation occurs only once." *Fogel v. Collins,* 531 F.3d 824, 834 (9th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

Thus, "[f]or purposes of *Monell* liability, the term 'policy' includes within its definition not only policy in the ordinary sense of a rule or practice applicable in many situations. It also includes 'a course of action tailored to a particular situation and not intended to control decisions in later situations.'" *Lytle v. Carl,* 382 F.3d 978, 983 (9th Cir. 2004) ("It does not matter that the final policymaker may have subjected only one person to only one unconstitutional action [because] a municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority.") (quoting *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)).

The term "policy" further includes not only formally adopted rules but also "customs," which "by longstanding practice have become ***standard operating procedure***." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (emphasis added).

"A 'policy' can be one of action, *see Monell*, 436 U.S. at 661 (forcing women to take early maternity leave), or **inaction**, *see City of Canton*[ *v. Harris*], 489 U.S. [378,] 387 (1989) (failure to train) or *Oviatt v. Pearce,* 954 F.2d 1470, 1477 (9th Cir. 1992) (failure to implement adequate procedural safeguards)." *Fairley v. Luman,* 281 F.3d 913, 918 (9th Cir. 2002). *See also Gant v. Cty. of Los Angeles,* 772 F.3d 608, 619 (9th Cir. 2014) ("A public entity can be liable under the Fourteenth Amendment for failing to 'institut[e] readily available procedures for decreasing the risk of erroneous detention.'").

Consequently, the 9th Circuit has identified several ways to establish municipal liability under Section 1983, including: (1) proof that a municipal employee committed the alleged constitutional violation pursuant to a formal governmental policy or custom as defined above, *see Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989); (2) proof that the individual who committed the constitutional violation was either an official with "final policy-making authority," or a subordinate to whom such authority was duly delegated, *see Christie,* 176 F.3d at 1236; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); (3) proof that an official with final policy-making authority (or a subordinate with delegated authority) ratified a subordinate's unconstitutional decision, *see Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir. 1991); and (4) proof that a municipality's failure to train its employees amounts to deliberate indifference to the rights of others. *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Blankenhorn v. City of Orange,* 485 F.3d 463, 484 (9th Cir. 2007)*.*

Because most of these municipal liability theories require fact-intensive inquiries involving indirect and inferential evidence, the 9th Circuit has made it clear that they are usually inappropriate for determination on summary judgment. *See, e.g., Christie v. Iopa,* 176 F.3d 1231, 1240 (9th Cir. 1999) ("Ordinarily, ratification is a question for the jury."); *Lytle,* 382 F.3d at 982 ("it is for the jury to determine whether [the policy-maker's] decisions have caused the deprivation of rights at issue"); *Oviatt,* 954 F.2d at 1478 ("Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury."); *Trevino v. Gates,* 99 F.3d 911, 920 (9th Cir. 1996) (" Normally, the question of whether a policy or custom exists would be a jury question.").

For reason set forth below, Sheriff Goetz and Clearwater County are liable under all four theories.

A.      **Barlow Acted Pursuant To County Policy Or Custom.**

      1.      *Policy No. 1: Deputies with conflicts of interest may arrest with impunity*.

Turning to the first method of establishing municipal liability, CCSO had no policy prohibiting a deputy from responding to criminal calls involving family or close friends, despite the potential conflict of interest. (Goetz depo., p. 17). CCSO's policy was that because the county is so small, whichever deputy is the closest will respond to a criminal call, despite any conflict of interest. *Id*.

Pursuant to CCSO's official policies, Sheriff Goetz was and is the ultimate authority and primary policymaker for Clearwater County regarding matters of law enforcement within the meaning of *Monell*. (Exh. 6 to Declaration of Jason Wood, Policy 102.3, p. 3.097). *See Larez,* 946 F.2d at 646; *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986); *Brandon v. Holt,* 469 U.S. 464, 472 (1985). Goetz realized CCSO's policy of ignoring conflicts of interest created a likelihood that a criminal investigation or arrest could be unduly influenced by the deputy's personal relationship. (Deposition of Chris Goetz, 18:14-24, attached as Exh. 5 to Wood Decl.). For that reason he claims that he would have removed the conflicted deputy from such an arrest or investigation if he heard about it. However, CCSO had no policy, procedure or protocol requiring officers to report conflict of interest up the chain. Sheriff Goetz and CCSO simply left it up to his deputies to decide what is important to report with no rules. (Goetz depo., 18:21 - 20:10).

Under these facts, a policy or custom allowing a CCSO deputy to make an arrest under the influence of a conflict of interest, and leaving it entirely up to such a deputy whether or not she should report it, is by any other name a policy or custom approving of false arrests by such deputies. *See, e.g., Fairley v. Luman,* 281 F.3d 913, 918 (9th Cir. 2002) (Police Chief's "decision not to instigate any procedures to alleviate the problem of detaining individuals on the wrong warrant could

constitute a policy in light of his testimony he knew it was 'not uncommon' that individuals were arrested on the wrong warrant").

This policy caused the deprivation of Mr. Baker's constitutional rights. But for Barlow's close friendship with Nelson, she likely would not have falsely accepted her good friend's story while stubbornly refusing the slightest effort to verify the story that was easily available to her. Summary judgment must be denied on this basis.

    **2.**    *Policy No. 2: Probable cause is not required for underlying crime for an arrest for resisting/obstructing*.

CCSO had another policy that also caused the violation of Mr. Baker's constitutional rights. It was CCSO's policy in 2018 that all arrests were to be made only on probable cause. (Goetz depo., 31:3-6). However, this policy permitted, and still permits, deputies to arrest someone for being peacefully uncooperative in submitting to an arrest for a crime unsupported by probable cause. (Goetz depo., 32:14 - 33:19). This policy is in direct violation of Idaho and 9th Circuit law. *See Bishop*, 146 Idaho at 817; *Velazquez v. City of Long Beach,* 793 F.3d 1010, (9th Cir. 2015). This unconstitutional policy was a direct cause of Barlow's unconstitutional arrest of Mr. Baker. (Barlow depo., 72:1-15). CCSO and Goetz in his official capacity are therefore liable for Mr. Baker's constitutional injury caused by such policy.

**B.**    **Goetz Violated Mr. Baker's Constitutional Rights**.

Turning to second method of establishing municipal liability, Sheriff Goetz is individually liable for violating Mr. Baker's constitutional rights. A law enforcement officer "is liable in his individual capacity if he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez*, 946 F.2d at 646. "Supervisory liability is imposed against a supervisory official in his individual capacity [1] for his own culpable action or inaction in the

training, supervision, or control of his subordinates, [2] for his acquiescence in the constitutional deprivations of which the complaint is made, or [3] for conduct that showed a reckless or callous indifference to the rights of others." *Id*.

Applying these standards to Sheriff Goetz, it is clear he caused Mr. Baker to be arrested in violation of his constitutional rights, based upon the following evidence:  (1) Goetz was well aware of the long-standing and bitter property dispute between Nelson and Mr. Baker (Goetz depo., 22:4 - 23:15, 27:17 - 28:3; Deposition of Amanda Barlow, 22:4 - 23:8, attached as Exh. 3 to Wood Decl.; Deposition of Chris Nelson, 33:22 - 34:6, 39:10 - 41:4, attached as Exh. 2 to Wood Decl.; Deposition of Arthur Baker, p. 40, attached as Exh. 1 to Wood Decl.); (2) Goetz was well aware of Barlow's close personal friendship with Nelson (Goetz depo., 28:15 - 29:7; Nelson depo., 35:18-21); (3) Goetz himself he was a long-time personal friend of Nelson, having done recreational horseback riding with her and Barlow 2-3 times per year together for 20 years (Goetz depo., 12:12-13, 19:4-18; Nelson depo., 12:7-16; (4) he considered Nelson to be a long-time resident, while he considered Mr. Baker a "newcomer" (Goetz depo., 24:4-10); (5) Mr. Baker met with Goetz just a few days before his arrest, wherein Mr. Baker described the property dispute, including the fact that Nelson had no right to use Baker's driveway and she was trespassing and cutting her fence and gate; Goetz replied by printing out and handing to Mr. Baker Idaho's civil trespass statute, I.C. § 6-202, ***and granted Baker permission to block Nelson from using the driveway*** (Baker depo., pp. 45-46; Goetz depo., pp. 24-27 and Exhs. 4 and 5 thereto); (6) Shortly after that meeting, and just hours after the arrest, Goetz learned Barlow arrested Mr. Baker for false imprisonment and resisting/obstructing, doing what Goetz gave him permission to do (Goetz depo., 30:6-17); (7) Goetz admitted Mr. Baker's arrest struck him as "unusual," as he had been aware the long-standing dispute had always been civil and not criminal in nature, and because he did not know of anyone in Clearwater County ever having been arrested for false imprisonment (Goetz depo., 30:18-22, 39:3-16); (8) nevertheless, having teed

Mr. Baker up for the arrest and possessed of all this knowledge, did ***nothing*** to remedy or even inquire into the situation.  For example, (9) he never reviewed the case to determine whether the arrest was supported by probable cause on that day or any other time (*id.,* 31:7-10); (9) at no time, even after he became aware all charges were dismissed against Art for lack of evidence (Exh. A to Declaration of Defense Counsel, p. 1.170 [Dkt. 26-1, p. 11 of 21]), did Goetz or anyone else initiate or conduct any kind of investigation into the events surrounding the arrest (Goetz depo., 34:23 - 35:4); (10) he instituted no change in or addition to any CCSO policy, practice, custom, or training to avoiding problems of a similar nature in the future (Goetz depo., 35:23 - 36:6); (11) neither he nor anyone else took any disciplinary action against Barlow whatsoever (*id.,* 35:5-12); (12) neither he nor anyone else ever held any kind of meeting with Barlow or anyone else to discuss the arrest or how matters of that nature might be handled differently to avoid similar problems in the future (*id.,* 34:23 - 35:4, 36:3-6); (12) Goetz never took Barlow aside and suggested to her that she had done anything wrong or inadvisable (*id.,* 35:13-17); (13) *in fact, he has never even discussed the events of July 30, 2018 at all with Barlow* (*id.,* 36:7-9); and (14) if the foregoing could possibly leave any room for doubt on the matter, after all this time and having had the opportunity to fully review the matter Sheriff Goetz ***still approves of Barlow's unconstitutional conduct*** based upon Barlow's debunked belief that Nelson had no means of egress other than Mr. Baker's driveway and that she had a legal right to use it.  (*Id.,* 41:17-25).

Goetz plainly "set in motion a series of acts by others . . . which he knew or reasonably should have known, would cause others to inflict the constitutional injury," and when he learned his advice to Mr. Baker had resulted in his arrest not only did nothing to remedy the situation but admittedly approved of the false arrest, demonstrating " reckless or callous indifference" to Mr. Baker's rights.  *Larez,* 946 F.2d at 646.  Goetz therefore committed a constitutional violation against Mr. Baker rendering Goetz individual liable in his individual capacity for Mr. Baker's constitutional

injuries. And, as the ultimate policy-making authority for the county on matters of law enforcement, Sheriff Goetz thereby subjected Cassia County to liability under *Monell*. *Larez,* 946 F.2d at 646 ("evidence that Chief Gates, an authorized policymaker on police matters . . . made or ratified a decision that deprived plaintiffs of their constitutional rights would suffice for official liability under *Pembaur*[475 U.S. at 480-81]").

C. **Goetz Ratified Barlow's Violations Of Mr. Baker's Constitutional Rights.**

Turning the to third method of establishing municipal liability, i.e., ratification, the evidence recited above overwhelmingly establishes that Goetz ratified Barlow's unconstitutional conduct.

It is well established in the Ninth Circuit that post-event evidence may be used to prove the existence of municipal policy for purposes of *Monell* liability. *See Henry v. Cnty. of Shasta,* 132 F.3d 512, 518 (9th Cir. 1997). "Policy or custom may be inferred if, after the [challenged conduct], the [municipal] officials took no steps to reprimand or discharge the [officers], or if they otherwise failed to admit the [officers'] conduct was in error." *McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir. 1986).

"Ratification and thus the existence of a *de facto* policy or custom, can be shown by a municipality's **post-event conduct**, including its conduct in an investigation of the incident." *Johnson v. Shasta County*, 83 F.Supp.3d 918, 933 (E.D. Cal. 2015) (emphasis added) (quoting *Dorger v. City of Napa,* 2012 WL 3791447, *5 (N.D.Cal. Aug. 31, 2012) (citing *Henry v. Cnty. of Shasta,* 132 F.3d 512, 518 (9th Cir.1997)); *Christie,* 176 F.3d at 1240 (finding failure to discipline along with after-the-fact conduct indicating policymaker agreed with subordinate's conduct sufficient to show ratification). "**Ordinarily, ratification is a question for the jury**." *Id*. (Emphasis added).

The Ninth Circuit recently reaffirmed that "[municipal] liability will turn on whether Chief [of police] took steps to reprimand or discharge the Officers, or failed to admit their conduct was in

error." *Hernandez v. City of San Jose,* 897 F.3d 1125, 1140 (9th Cir. 2018) (quoting *McRorie*, 795 F.2d at 784).

The foregoing evidence does not merely give rise to a *de facto* policy inference based upon Goetz's incontrovertible failure to reprimand, discharge, investigate, or admit Barlow's conduct was in error, it establishes that Goetz *expressly has approved of Barlow's misconduct* on behalf of Clearwater County. This is more than enough to defeat summary judgment.

### D.     Goetz's Failure to Train Barlow Exhibited Deliberate Indifference.

Goetz's obviously failed to train or supervise Barlow adequately that probable cause is required for a predicate crime in order to arrest someone for peacefully disobeying an order regarding that predicate crime. Not only was Barlow unaware of this fundamental legal tenet, Goetz himself wrongly believed and continues to believe that *any* resistance or obstruction of a law enforcement officer is a crime, even in the absence of probable cause for the underlying investigation. (Goetz depo., 32:14 - 33:19).

According to Barlow's testimony, she arrested Mr. Baker for disobeying her order to open his gate on his private property, which as unlawful. (Barlow depo., 72:8-10). Had Barlow been trained properly in accordance with clearly established law, she would not have arrested Mr. Baker. (Barlow depo., 89:3-9). Goetz's failure to properly train his deputies accordingly therefore constitutes "deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton,* 489 U.S. at 388. *See also Hadley v. City of Anaheim,* 2020 U.S. Dist. LEXIS 171721 **34-36; 2020 WL 5604024 (S.D. Cal. Sept. 18, 2020); *Dorger*, 2012 WL 3791447 at *4 (same).

Whether a local government has displayed a policy of deliberate indifference is a question for the jury not a issue to that should be determined on summary judgment. *Oviatt,* 954 F.2d at 1478. Summary judgment must therefore be denied for CCSO's municipal liability for failure to train.

In summary, whether the evidence is viewed an applied to each method of establishing municipal liability, or viewed as a whole, summary judgment is entirely inappropriate.

## II.
## CLEARWATER COUNTY IS LIABLE UNDER THE IDAHO TORT CLAIMS ACT.

The defendants argue Mr. Baker's state law claims should be denied because he failed to present his notice of tort claim to the Clearwater County clerk or secretary. This argument is without merit.

"The purposes of the ITCA notice requirement are to (1) save needless expense and litigation by providing for amicable resolution of the differences between parties, (2) allow authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the [governmental entity's] liability, if any, and (3) allow the governmental entity to prepare defenses. *CNW, LLC v. New Sweden Irrigation Dist.*, 161 Idaho 89, 91-92 (2016).

The Idaho Supreme Court has repeatedly noted that "Idaho Code section 73-102 instructs that '[t]he compiled laws establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed, with a view to effect their objects and to promote justice.'" *CNW,* 161 Idaho at 92. "Thus, [the Idaho Supreme] Court has consistently taken a liberal approach to interpreting the notice requirement of the ITCA." *Id*. (quoting *Doe v. Durtschi*, 110 Idaho 466, 474 (1986) (quoting *Farber*, 102 Idaho at 402).

Applying this liberal approach, the Idaho Supreme Court has recently made it clear that "[b]ecause service is not expressly required by Idaho Code section 6-906 even though it is required in another context by Idaho Code section 6-916, we infer that the Legislature did not intend the presentment requirement of Idaho Code section 6-906 to include the formalities of service of process." *CNW,* 161 Idaho at 92. Thus, so long as long as the tort claim is delivered to right county

officials within the 180-day deadline, it does not matter that the initial recipient was not the secretary or clerk. *Id*.

Failure to comply with the notice requirements of the ITCA is an affirmative defense on which the defendant bears the burden of proof. *Smith v. Mitton*, 140 Idaho 893, 898 (2004). "Where, as here, the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South,* 965 F.2d 1532, 1536 (9th Cir. 1992). The defendants have not met their burden of presenting any evidence whatsoever that neither the county clerk nor secretary were timely served the notice of tort claim, much less evidence that would entitled them to a directed verdict on the issue. Consequently, the burden has not shifted to Plaintiff and summary judgment on the issue must be denied. *Id*.

The defendants next argue that because Mr. Baker posted a bond in Bonneville County rather than the county in which they reside, his claims against them must be dismissed under Idaho Code §6-610. Their argument misses the mark. Absolutely nothing in section 6-610 law contains any such requirement nor even a reference to any "county." It statute merely requires the plaintiff to "prepare and file with, and at the time of filing the complaint or petition in any such action, a written undertaking with at least two (2) sufficient sureties in an amount to be fixed by **the court**." *Id*. (emphasis added).

First, it should be noted that Clearwater County concedes that it is not a "law enforcement officer" within the meaning of Section 6-610's bond requirement. The sole basis for the individual defendants' argument is its reliance upon the following language from a decision of the Idaho Supreme Court: "To overcome the 'jurisdictional problem noted in *Rogers* [*v. State*, 98 Idaho 742, 572 P.2d 176 (1977)], a plaintiff may invoke the jurisdiction of a district court by filing with the court, ***located in the county where the law enforcement officer performs his or her official duties***,

a petition requesting an order fixing the amount of bond." *Allied Bail Bonds, Inc. v. County of Kootenai,* 151 Idaho 405, 411 (2011). Their reliance is misplaced. This language is unmitigated *dicta*. No issue was raised in the that case about the location of the court in which the bond should be posted. In fact, the "jurisdictional problem in *Rogers*" upon which the quoted language from *Allied Bail Bonds* relied did not arise from any alleged failure to post the bond in the defendants' county. It appears to be entirely unsolicited and gratuitous.

Binding precedent cannot be based upon bare hypothetical scenarios untethered from facts that bear on the case being decided. Reliance upon dicta is dangerous, for reasons recently discussed by 3rd Circuit Judge Kent Jordan:

> There is a good reason why we avoid wading into fraught waters without needing to and without careful legal analysis supporting the conclusions we reach. Dicta are often dangerous. Because they are unmoored from any concrete set of facts and are frequently the product of judicial musing rather than adversarial presentations from parties with a vested interest in exploring issues in detail, dicta can be ill-informed.

*Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 515, 517 (3rd Cir. 2018) (Jordan, J., dissenting).

Lastly, the individual defendants erroneously claim immunity under Idaho Code § 6-904(3) from all but "malice or criminal intent." Mr. Baker has produced ample evidence of *malicious prosecution* and *retaliatory arrest*, recited at length above and in his response to Barlow's motion for summary judgment to avoid Section 6-904(3) by both Barlow and Goetz.[1]

**CONCLUSION**

For the foregoing reasons, defendant Clearwater County and Goetz's motion for summary judgment should be denied.

---

[1] Mr. Baker does not claim defendant Russell acted with malice or criminal intent.

RESPECTFULLY SUBMITTED this 24th day of September, 2021.

Wood Law Group, PC

By: /s/_____
T. Jason Wood, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 24, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Bentley G. Stromberg           bstromberg@clbrmc.com
Attorney for defendants

Wood Law Group, PC

By: /s/_____
T. Jason Wood, Esq.
