T. Jason Wood, Esq.
WOOD LAW GROUP, PC
1488 Midway Avenue
Idaho Falls, ID  83406
Telephone: (208) 497-0400
Fax: (208) 932-4380
Email: jason@woodlaw.net
Idaho State Bar No. 5016

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARTHUR BAKER, | Case No. 2:20-cv-376-CWD |
| Plaintiffs, | |
| v. | |
| CLEARWATER COUNTY, CITY OF OROFINO, AMANDA BARLOW, MATT RUSSELL, and CHRIS GOETZ, | **PLAINTIFF'S RESPONSE TO DEFENDANTS BARLOW AND RUSSELL'S  MOTION FOR SUMMARY JUDGMENT [DKT. 28]** |
| Defendants. | |

## I.  SUMMARY JUDGMENT STANDARD.

Plaintiff will not belabor the well-worn summary judgment standard here, except to point out how Rule 56 applies to issues peculiar to the instant case.  For example, the existence of probable cause "is a question for resolution by a jury where, as here, genuine disputes over material facts exist."  *Milla v. City of Los Angeles,* 752 Fed. Appx. 507, 508 (9ᵗʰ Cir. 2019)).  "Moreover, when determining probable cause to [arrest or] prosecute, 'what facts the defendant knew is an issue of fact for the jury.'"  *Id.*

Regarding the assessment of qualified immunity in the context of qualified immunity, as the Ninth Circuit has consistently held that "[t]he determination of whether a reasonable officer could have believed his conduct was lawful is a determination of law that can be decided on summary judgment *only if the material facts are undisputed.  LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9ᵗʰ Cir. 2000) (emphasis added) (citing *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9ᵗʰ Cir.1993)).  *If facts necessary to decide the issue of qualified immunity are in dispute, then summary judgment granting qualified immunity is improper*.  *Id*.

## II.  DEFENDANTS VIOLATED PLAINTIFF'S FOURTH AMENDMENT RIGHTS.

In order to determine whether Mr. Baker's arrest passes constitutional muster, it is necessary first to determine the elements of the alleged crime(s) for which he was arrested.  The predicate "crime" was Mr. Baker had allegedly *falsely imprisoned* Nelson, in violation of Idaho Code § 18-2901.  (Barlow depo., 71:1-6, attached as Exh. 3 to Declaration of Jason Wood).  Under that statute "False imprisonment is the unlawful violation of the personal liberty of another."  *Id*.  Of course there are many personal liberties, including speech, religion, arms, privacy,  just to name of few.  The statute  itself  does  not  identify  the  personal  liberty  the  violation  of  which    constitutes  false imprisonment.  The Idaho Supreme Court, however, has clarified:  "All that is necessary is that the

individual be restrained of his liberty,–compelled to remain or go where he does not wish to,–***prevented from moving from one place to another*** *as he may deem proper and desire,*–***without sufficient [legal] authority*** . . . ." *Griffin v. Clark*, 55 Idaho 364, 372-373 (1935) (emphasis added).

Based on these principles, the Idaho Criminal Jury Instructions on False Imprisonment, provide:

> In order for the defendant to be guilty of False Imprisonment, the state must prove each of the following:
> (1) On or about [date]
> (2) in the state of Idaho
> (3) the defendant [name], ***___unlawfully___***[1]
> (4) violated the right of [name of victim] to come and go or to stay when or where [name of victim] wanted.

In summary, in order to arrest Mr. Baker for false imprisonment, Barlow was required to obtain probable cause to believe that Mr. Baker (1) prevented Nelson from leaving the premises (2) without the legal right to do so.  Barlow had no evidence to support either proposition.

**B.     Defendants Falsely Arrested Baker Without Probable Cause**.

"[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Lee v. City of Los Angeles,* 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir. 1988)).  In this regard, the Supreme Court "has stated the general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Bailey v. U.S.,* 133 S. Ct. 1031, 1037 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)).

"Probable cause exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being

---

[1]Curiously, the defendants omit this most important element from their dubious quotation of ICJI 1233.  (Dkt. 23, p.8).

committed by the person being arrested." *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). "Alternatively, this court has defined probable cause as follows: when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" *Id.* (citing *United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986)) (alteration in original); *see also Crowe v. County of San Diego,* 608 F.3d 406, 432 (9th Cir. 2010)).

      1.    ***Mr. Baker did not restrain Nelson from leaving***.  In effort to satisfy the first element of the crime of false imprisonment (physical restraint), Barlow remarkably claims Mr. Baker prevented Nelson from leaving ***because his wife  parked her car behind Nelson***.  (Dkt. 23, p.8). However, Diane Baker's parking behind Nelson obviously is not evidence that *Mr. Baker* was guilty of false imprisonment.  Diane Baker was never charged with false imprisonment, and she is not a plaintiff here.  Moreover, Mrs. Baker moved her car as soon as Barlow asked her to do so.  (Barlow Depo., 66:8-12).  Indeed, it was the repeatedly expressed *intent* and *desire* of both Mr. Baker and Mrs. Baker for Nelson to back up the approximately 100 yards and utilize her own deeded easement on the "cutoff" road.  (Dkt. 26-1, pp. 2-4 of 21; Barlow depo., 41:8 - 43:22, 46:5-24, 66:21 - 67:18, 71:10-17; Exhs. E and F to Decl. Defense counsel).

      Barlow and her attorney knew this when they filed their motion.  It is in Mr. Baker's audio recording of the event presented to the Court by Barlow.  (Dtk. 26, Exhs. E and F to Decl. of defense counsel).  It is in Barlow's own report, which was attached to the complaint.  (Dkt. 1, pp. 11-13; Dkt. 26-1, pp. 2-4 of 21).  Their contrary, attempt to impute to Mr. Baker a desire to box Nelson in and keep her from leaving is disingenuous.

      Barlow suggests in passing that Nelson's cutoff road, which Mr. Baker asked Nelson to use in lieu of his gated access, was somehow inaccessible.   This suggestion is also false.  Nelson never

told Barlow the cutoff road was inaccessible nor impossible to cross.  To the contrary, Nelson

admitted to Barlow she could, in fact, have used that road:

> DETECTIVE BARLOW: So you can't go that way?
> MS. NELSON: No[Yes], because the wire is cut, ***so I could drive through there***.......
> MS. NELSON: Other than there is a big hole in the road, which you know, the truck
> kind of bottoms out on.

(Barlow depo., 57:2-12) (emphasis added).  Barlow knew Nelson could have used the cutoff road.

(*Id.*, 60:2-5; 90:4-13).  Nelson never told her friend Barlow the road was so bad it required a 4-

wheel-drive vehicle.  (*Id.*, 68:5-8).  Instead, Nelson told Barlow she simply "chose" not to use the

cutoff road because it was *less convenient* than Mr. Baker's road.  (Barlow depo., 88:3-5:  "She

chose – she did not want to use that road because it was rough . . . ."; Deposition of Christine Nelson,

73:11-19, attached as Exh. 2 to Wood Decl.).

Barlow attempts to remake Nelson's cutoff easement as an "unmaintained '4-wheeler' road

which Nelson's two wheel drive pickup might not be able to safely traverse."  (Dkt. 23, p.9 ) (citing

Barlow depo., 60:2-60:10).  This is a mischaracterization of the evidence.  Mr. Baker easily traversed

the road in his Hyundai Elantra and Ford Focus between 30 and 50 times before Barlow arrested

him.  (Deposition of Arthur Baker, 51:15-20, 57:2-9, attached as Exh. 1 to Wood Decl.; Declaration

of Arthur Baker, ¶6 and Exhs. 1 - 3 thereto).  Both his Hyundai Elantra and Ford Focus are two-

wheel drive compact cars with low ground clearance.  (*Id.*).  Nelson's Ford Ranger pickup has much

better ground clearance and is even narrower, much more adroit at traversing the road than Mr.

Baker's cars which had no problem doing so.  (Baker Decl., ¶7 and Exh. 4 thereto).[2]  Again, she simply chose not to use her easement because it was less convenient than Mr. Baker's road.[3]

However, even Nelson's claim that her road was less convenient than Mr. Baker's was baseless.  She had successfully used her cutoff easement for about 5 years, from 1993 to 1998, as her sole means of ingress to and egress from her home/property.  (Nelson Depo., pp. 13-15).  In 1998 the existing (and more convenient) Legacy Drive road was built, which she has used by permission since then.  (*Id*.).  It had been 20 years since she drove her cutoff easement in a car.  (*Id.*, 19:11-15, 73:8-10).  Consequently, she admitted she did not know whether she could use her cutoff easement on the morning of July 30, 2018, *because she had not used that road with anything other than a horse or ATV since 1998.  (Id*., 73:8-10).

More importantly, it was pure speculation *on Barlow's part* to simply accept Nelson's word that it was too inconvenient or unsafe for her to be relegated to her deeded easement.  As a close friend of Nelson, Barlow had ridden horses with Nelson on her cutoff easement several times. (Barlow Depo., 20:2-5).  But she had never driven a car on it and had no personal knowledge to justify her accepting Nelson's story despite Mr. Baker's insistence that he easily traverses the road in a less capable vehicle.  (*Id*., 58:17-19; Baker Depo., 67:17-23; 26-1, p. 3 of 21)  Barlow admitted at deposition that "if she [Nelson] had another means of egress then he [Baker] wouldn't have been

---

[2]Compare Mr. Baker's 2014 Ford Focus dimensions and specs, https://www.carexpert.com.au/ford/focus/2014-titanium-971b2e65, with Nelson's Ford Ranger. https://www.cars.com/research/ford-ranger-1997/specs/ (Under "Dimensions").

[3]"Q. Art went that way in his Hyundai. Do you have any reason to disbelieve that he could do that?  A. Art can do whatever he wants with his vehicles. I drive a company truck that I take very good care of. Art beats his vehicles up. . . .  I don't care what Art does with his vehicle. I do care about my company truck that has to have -- to be work related."  (Nelson depo., 73:11-19).

guilty of false imprisonment."[4]  (Barlow depo., 110:12-23).  She admitted the opportune time to confirm or dispel her belief regarding the condition of Nelson's cutoff easement was *at the time, when Baker begged her to drive it before arresting him.*  (*Id.*, 84:6-25, 109:19 - 110:3).  Finally, she admitted she easily could have driven the 100 yards to Nelson's cutoff easement and definitively confirmed Mr. Baker's exculpatory proffer, but she chose not to do so.  (*Id.*, 84:6-25).

In making this deliberate choice Barlow turned a blind eye to evidence she admitted would entirely exculpate and exonerate Mr. Baker if confirmed.  This was a violation of Mr. Baker's 4th Amendment rights *as a matter of law*, warranting summary judgment **in Mr. Baker's favor**.  "As a corollary of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not ***disregard*** facts tending to ***dissipate*** probable cause."  *Lopez,* 482 F.3d at 1073 (internal quotation and ellipses omitted) (emphasis added).  *See also Ramirez v. City of Buena Park,* 560 F.3d 1012, 1023 (9th Cir. 2009) (same); *Crowe,* 608 F.3d at 433 (same).  Thus, it has long been established in the Ninth Circuit that "an officer may not ignore exculpatory evidence that would negate a finding of probable cause." *Yousefian v. City of Glendale,* 779 F.3d 1010, 1014 (9th Cir. 2010).[5]

---

[4]*See also* Deposition of Chris Goetz, 41:17-23: "If a person is not prevented from going where they want to go, if they can go just another way to get where they want to go, then [that] would [NOT] be false imprisonment[.]" (Attached as Exhibit 5 to Wood Decl.).

[5]*See also Broam v. Bogan,* 320 F.3d 1023, 1032 (9th Cir. 2003) (same); *Ahlers v. Schebil,* 188 F.3d 365, 372 (6th Cir. 1999);  (Recognizing "that officers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone."); *Sevigny v. Dicksey,* 846 F.2d 953, 957–58 (4th Cir. 1988) (holding that an officer who neglected to "avail himself of readily available information" which would have exculpated the plaintiff was not entitled to qualified immunity for unlawful arrest); *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to [potentially exculpatory] facts").

Moreover, "[i]n establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991) ("[P]olice officers ha[ve] a duty to conduct an investigation into the basis of [a] witness' report.")). Hence this has been clearly established in the Ninth Circuit no later than 2001.[6]

Under the undisputed and even more compelling facts and circumstances of the instant case, no reasonable officer would have arrested Mr. Baker without first taking the minimal next step of driving the hundred yards down Nelson's cutoff easement, which would have conclusively established Mr. Baker's innocense. Barlow's conscious refusal to do so constitutes deliberate indifference to Mr. Baker's 4th Amendment rights. Summary judgment should be entered on this point *against* Barlow and *in favor of Mr. Baker.*

2.     ***Mr. Baker's blocking his gate was not "unlawful*."** The avalanche of evidence against Barlow and Clearwater County does not stop there. Barlow also lacked probable cause to support the second and critical element of the crime of false imprisonment – that the alleged physical restraint was *unlawful*. *See Griffin*, 55 Idaho at 372-373; ICJI 1233.

Christine Nelson had a valid, deeded easement on the cutoff road. (Baker Decl., ¶8; Nelson depo., 17:17-25 and Exh. 7 thereto). As established above, Nelson's cutoff road was perfectly

---

[6] *See also Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009) (officers easily could have but failed to gather rudimentary physical evidence or question the citizen witness); *U.S. v. Struckman*, 603 F.3d 731, 742 (9th Cir. 2010) ("there was, in fact, much else the officers could have done to investigate the reported activity" that would have negated probable cause); *Frunz v. City of Tacoma*, 468 F.3d 1141, 1144 (9th Cir. 2006) ("There was, in fact, much else the officers could have done [but failed to do].... Bursting through the back door unannounced with guns drawn and handcuffing the occupants ... was neither necessary nor reasonable in these circumstances. No reasonable officer familiar with the law of searches and seizures could have thought otherwise.").

useable although less convenient than Mr. Baker's easement on Legacy Drive. The next element in the equation is, did Nelson have a lawful right to use Mr. Baker's easement on Legacy Drive, or was Mr. Baker entitled to foreclose Nelson's attempts? The answer is beyond dispute – Nelson admitted under oath that use of Mr. Baker's easement had merely been by bare *permission* based upon a strictly oral license from a prior owner, Konkolville Lumber. (Baker Decl., ¶10 and Exh 6 thereto; Nelson depo., 17:1 - 18:5, 18:17-24). Because Nelson's use of the Legacy Drive access was "by unwritten agreement[ or permission, ***it*] *is merely a license, revocable by the licensor*." *Kaupp v. Hailey,* 110 Idaho 337 (Ct. App. 1986) (emphasis added). "***It is well-settled that a license is ordinarily revocable at will*.**" *State v. Bowman*, 124 Idaho 936, 945 (Ct. App. 1993) (emphasis added). Indeed, when the landowner withdraws his permission to use a road, the former licensee who attempts thereafter to use the road is guilty of the ***crime of trespassing***. *Id*.

On September 14, 2016, Mr. Baker acquired title to the property which contains the Legacy Drive access. (Baker Decl., ¶9 and Exh. 5 thereto). Shortly thereafter, on January 6, 2017, Mr. and Mrs. Baker granted Nelson a written, revocable license to use the Bakers' Legacy Drive access, with various conditions, which included the requirement that Nelson shut the gates after entry/exit. (Nelson Depo., 25:10-20, and Exh. 8). In late July 2018, because Nelson had repeatedly (and admittedly) kept leaving the Baker's gates open, in violation of the terms of the license (among other reasons), Mr. Baker revoked the license, personally served Nelson with the revocation, and posted it on his gate. (Baker Depo., 39:25, 43:3-12, 44:11 - 45:8; Nelson Depo. 25:10-20, 32:14-20, Exh. 8 thereto). The Bakers had *every legal right* to bar Nelson from trespassing on their property, even without a reason at all. *Bowman*, 124 Idaho at 945 ("Furthermore, the Idaho Supreme Court has refused to read a general reasonableness requirement into the trespass statute, holding that 'Idaho

Code § 18-7008(8) does not require that the owners of private property have any reason for asking trespassers to get off their land.'").

Barlow was well aware of the ongoing property dispute between Nelson and Mr. Baker before she arrested him. (Barlow depo., 22:4 - 23:8). She admitted the dispute was purely civil in nature, but claimed that it became criminal "Because he would not allow her to go out on [Mr. Baker's] easement road, the one that was always used." (*Id.,* 69:8-12). However, Mr. Baker was well within his rights to bar Nelson from his property. He repeatedly tried to explain this Barlow, but she refused to listen and by her own admission did *absolutely nothing* to confirm or deny Nelson's false assertions of an easement to use Mr. Baker's Legacy Drive access. (Dkt. 26-1, pp. 2-4 of 21). By her own admission she merely *assumed* her friend Nelson's lie was true and that Mr. Baker's assertion of his legal rights was false:

> Q. And before you arrested Art, did you do anything to confirm whether or not she had – actually had a legal right to use that Legacy Drive Road?
> A. Just her word and in the past of that being the one that was used.
> Q. Okay. People use roads all the time that they don't have legal rights to, don't they?               . . .
> Q. (By Mr. Wood) In Clearwater County do you encounter people that do that?
> A. Yeah. Yeah.
> Q. Have you done that before, used roads that you don't have an easement to?
> A. Yeah.
> Q. On a personal rather than professional basis?
> A. At my house.
> Q. All right. And in situations like that the owner can say, look, I don't want you using that road anymore legally?
>                     . . .
> A. Yes.

(Barlow Depo.*,* 69:18 - 70:16).

Nelson further admitted she could have simply diffused the situation and cited Mr. Baker and released him, giving her an opportunity to confirm whether he could lawfully bar Nelson from his Legacy Drive access.  Instead, she felt she had no choice but to arrest Mr. Baker simply, because she had previously committed to arresting him regardless.  (Barlow Depo., 81:22 - 82:21; 85:10-17).  Especially dispositive is the following exchange recounted by Barlow in her report as well as in her deposition and audio recording:

> I told them both to calm down and told them they were getting worked up over a driveway. Art replied, "Exactly, it's my driveway, its not hers." I told Baker she had access and he yelled and said, "She does not have access to this".  Baker told me I could not be the judge and jury.

(Dkt. 26-1, p. 2 of 21).

Barlow nevertheless decided to act as judge and jury without doing anything to confirm her friendship-influenced assumptions.  She looked at but disregarded Mr. Baker's legally recorded "Grant of Permission for Chris Nelson to Cross Our Land as per Record Survey Instrument #228614," which set out the Bakers' acquisition of the Legacy Drive road, including a recitation of the Clearwater County Recorder's instrument number for the deed, and she heard Mr. Baker assertions that Nelson did NOT have a legal right to use Legacy Drive.  (Nelson depo., 25:10 - 28:3, and Exh. 8 thereto; Baker depo., 59:20 - 60:7).  But Barlow rejected this evidence out of hand and made absolutely no effort to investigate the matter further before arresting him.  (Barlow Depo., 69:18 - 70:16, 89:15 - 90:3).

The Bakers' "Grant of Permission" which Barlow held in her hand, was enough by itself to dissipate any probable cause arising from Nelson's "word" that she had a legal easement.  She had only to read it.  But if there were any question at all, "[t]here was, in fact, much else [Barlow] could have done" to confirm or dispel Nelson's false claim of a legal easement to Legacy Drive.  *Furch*,

468 F.3d at 1144.  She could have called the county recorder's office to confirm the information recited in Bakers' "Grant of Permission" in her hand.  Having initially concluded that it was a purely *civil* matter, she could have called the county attorney or prosecutor and inquired on the legal issues before converting it to a *criminal matter*.  She could have called the Sheriff for direction.  She could have asked Nelson for a copy of a written grant of easement or access on Legacy Drive.  At the very least she could have asked Nelson if a written easement or access to Legacy Drive had ever been granted to her.

Barlow did NONE of the above nor anything else at all.  She turned a blind eye to the evidence in her hand and that was disclosed to her by the Bakers, merely because in her own words Mr. Baker was being "ridiculous" in asserting his legal rights (Barlow Depo., 41:24 - 42:12, 84:1-5), and because "I am not in the mood."  (Barlow Depo., 73:19 - 74:4).  In doing so, Barlow consciously ignored exculpatory evidence that would have negated probable cause for arresting Mr. Baker, with deliberate indifference to Mr. Baker's 4th Amendment rights.

     **3.**     ***Mr. Baker was entitled to peacefully refuse to obey Barlow's unlawful orders.***
Lastly, Barlow argues that even if she lacked probable cause to arrest Mr. Baker for false imprisonment, she had probable cause to arrest him for resisting/obstructing, in violation of Idaho Code § 18-705, because he refused her order to open his gate and move his truck.  (Dkt. 23, pp. 8-9).  This argument is without merit.  The Idaho Supreme Court has made it clear that "[b]ecause an unlawful  act is not considered a 'duty' under the statute, an individual may peacefully obstruct or refuse to obey an officer's unlawful act without violating the statute."  *State v. Bishop*, 146 Idaho 804, 817 (2009).  *See also Montoya v. City of Albuquerque,* 2004 U.S. Dist. LEXIS 28220, *14, 2004 WL 3426436 (D. N.M. May 10, 2004) ("A police officer cannot give an unlawful order and then base probable cause for an arrest on a citizen's refusal to obey that unlawful order.").

Barlow does not contend Mr. Baker's alleged resisting or obstructing was due to any force or violence on his part. The defendants' sole basis for the resisting/obstructing charge, according to the defendants' motion, was Mr. Baker's refusal to obey Barlow's unlawful orders to open his gate and move his truck. Consequently, as a matter of law he did not violate Idaho Code § 18-705 in doing so. Accordingly, as a matter of law there was no probable cause to arrest Mr. Baker for resisting/obstructing.

    **4.**      ***Matt Russell arrested Mr. Baker without probable cause***. Matt Russell participated in the arrest of Mr. Baker, recuffing him, stuffing him into Russell's truck and transporting him to jail. "Although a police officer is entitled to rely on information obtained from fellow law enforcement officers, this in no way negates a police officer's duty to reasonably inquire or investigate these reported facts." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1293 (9th Cir. 1999). The 9th Circuit "ha[s] denied qualified immunity to police officers who had indisputably relied on information obtained from other law enforcement officials, when we concluded that they violated their duty to conduct further investigation." *Id*. (citing *Guerra v. Sutton,* 783 F.2d 1371, 1375 (9th Cir. 1986) (federal agents' reliance on assurances by local police officers that appropriate warrants had been obtained, and resultant failure to inquire about the nature or scope of these warrants, was unreasonable); *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994) (inclusion in affidavit of account of arrest provided by another police officer and failure to conduct additional investigation may be reckless when account omitted material facts).

More recently, in *Green v. City & Cty of San Francisco*, 751 F.3d 1039 (9th Cir. 2018), SFPD automatic license plate reader ("ALPR") misread Green's license plate, wrongly identifying it as being from a stolen car. Officer Esparza, who operated the ALPR radioed it in and gave a description of Green's car, but did not give a visual confirmation of Green's plate because it was

dark and the ALPR photo was blurry.  Defendant Kim responded, pulled Green over, held her at gunpoint, forced her to her knees and cuffed her.  Kim could have visually cross-checked Green's license plate against the plate reported as stolen but failed to do so.  Green sued Kim for false arrest without probable cause.  The district court granted Kim's motion for summary judgment on the grounds that Kim was entitled to rely upon the information provided him by Esparza and dispatch. The 9th Circuit rejected the argument and reversed, reasoning that "[e]ven if Sergeant Kim's initial assumption was reasonable, the fact that Officer Esparza never verbally expressed that the plate had been visually confirmed also suggests that Sergeant Kim should have made an independent confirmation as *"[a]ll officers . . . have an ongoing duty to make appropriate inquiries regarding the facts . . . if insufficient details are relayed.*"  *Id.* at 1045-46.

Likewise, had Barlow told Russell that Nelson had a legal right to use Mr. Baker's gated access and that she had no other means of egress, Russell may have had the right to rely upon Nelson's assertion.  Instead, called to a scene to arrest someone for a crime almost *unheard* of resulting in an arrest, for what would universally be understood as a purely *civil dispute* (*see* Report of Expert Edward A. Leach, pp. 7-9, attached to his Declaration filed herewith), Russell just did what he was told, merely *assumed* there was evidence to support the charge, and made no further inquiry, even though he easily could have learned the falsity of the charges by driving 100 yards.  He, like Barlow, falsely arrested Mr. Baker without probable cause.

**B.     Barlow Maliciously Prosecuted Baker**.

In addition to lacking probable cause to arrest Mr. Baker, defendant Barlow maliciously prosecuted him in violation of his 4th Amendment rights.   "Federal courts rely on state common law for elements of malicious prosecution." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019). Under Idaho law "[t]o recover under a malicious prosecution claim, a plaintiff must prove (1) that

there was a prosecution; (2) that it terminated in favor of the plaintiff; (3) that the defendant was the prosecutor; (4) malice; (5) lack of probable cause; and (6) damages sustained by the plaintiff." *Berian v. Berberian*, 483 P.3d 937, 945 (Idaho 2020).  With regard to 3rd element, "Malicious prosecution actions are not limited to suits against [government] prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed.  *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066, (9th Cir. 2004).  *See also Berian, supra* (malicious "prosecutor" was, in fact, plaintiff's brother who alleged false criminal accusations against plaintiff to law enforcement).

The only two elements arguably at issue here are "malice" and "lack of probable cause."  Probable cause was plainly lacking as established above.   Barlow nevertheless claims that the magistrate's finding of probable cause is an "absolute defense" to a malicious prosecution claim.  She is wrong.  A judicial finding of probable cause merely "constitutes prima facie  – but not conclusive – evidence of probable cause."  *Awabdy*, 368 F.3d at 1067.  "Among the ways that a plaintiff can rebut [such] a prima facie finding of probable cause is by showing that the criminal prosecution was induced by *fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith*."  *Id.*  (emphasis added).  This includes intentional or reckless *omission* of potentially exculpatory evidence.  *Galbraith*, 307 F.3d at 1126-28; Restatement (Second) of Torts § 663, cmt. h. (1977) ("In determining what, if any, weight should be given to the commitment [i.e., probable cause determination] by a magistrate, the court should take into account evidence that the commitment was . . . procured by false testimony offered by the prosecutor or given in his behalf, *or by his withholding of material evidence known to him*.") (emphasis added); *Berian,* 483 P.3d at 945 (citing with approval various sections of Restatement (Second) of Torts on malicious prosecution).

In the instant case, the only evidence Barlow presented to the magistrate for his finding of probable cause was her narrative report. (Wood Decl, Exh. 7; Dkt. 26-1, pp. 2-4 of 21). She withheld from the magistrate the following critical facts:

> (1) Nelson had no legal right to use Mr. Baker's Legacy Drive road after he revoked her license; (2) Mr. Baker had a legal right to bar Nelson from trespassing on his property; (3) Barlow was close friends with Nelson; (4) Contrary to Mr. Baker's statement and (revoked) recorded Grant of Permission which Barlow held in her hand, Barlow did not read the revoked Grant nor do *anything* to substantiate her false assumption that her good friend, Nelson, had an easement to use Mr. Baker's Legacy Drive access; (5) Nelson had ready means of egress via her own deeded cutoff easement; (6) But Nelson simply chose not use her easement because it was less convenient; (7) Barlow easily could have confirmed that Nelson had ready means of egress *via* her own easement had she walked or driven mere yards either to observe Mr. Baker use the road or drive it herself; (8) Barlow chose not to do so because she had already formed a false belief beforehand that Nelson had a legal right to use Mr. Baker's Legacy Drive access, based solely upon her personal friendship with Nelson; and because (9) Barlow was "not in the mood" to hear anything from Mr. Baker that contradicted her friend's narrative or her own bias and false assumptions.

There is no doubt that had Barlow not withheld this information from the magistrate, the result would have very different. This is precisely the type of intentional or reckless omission that nullifies a judicial finding of probable cause. These omission were material, made recklessley and/or in bad faith because of her prior relationship with Nelson and biases against Baker, and were fraudulent and in bad faith. Barlow cannot launder her unconstitutional conduct through a magistrate by withholding such evidence. *Galbraith*, 307 F.3d at 1127 (malicious prosecution by coroner who asserted in autopsy report decedent was strangled by an assailant while ignoring abundant evidence that pointed to suicide); Restatement (Second) of Torts § 663, cmt. h (officer's "withholding of material evidence known" to her dissipates probable cause).

C.      **Both Barlow and Russell Used *Excessive Force* Against Mr. Baker**.

The Court examines the use of excessive force to effect an arrest under the 4th Amendment's prohibition on unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394, (1989); *Deorle v. Rutherford,* 272 F.3d 1272, 1279 (9th Cir. 2001). The defendant's actions are measured by "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham,* 490 U.S. at 397. "Because this inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City and County of San Francisco,* 751 F.3d 1039 (9th Cir. 2014).

In determining whether the defendants used reasonable force the Court must "balance the amount of force applied against the need for that force." *Bryan v. MacPherson,* 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath,* 342 F.3d 1057, 1061 (9th Cir. 2003)). ***"Where there is no need for force, any force used is constitutionally unreasonable.***" *Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) (emphasis in original). *See also Green,* 751 F.3d at 1049 (quoting *Lolli,* 351 F.3d 417).

It has long been clearly established that ***any amount of force used to make an unlawful arrest is constitutionally unreasonable***. *See Green*, 751 F.3d at 1049 ("Because it remains a question whether the stop was even justified by reasonable suspicion, the existence of a 'lawful investigatory stop' cannot support the district court's finding that the force was not excessive as a matter of law.").[7]

---

[7]*See also Liberal v. Estrada,* 632 F.3d 1064, 1079 (9th Cir. 2011) ("The district court correctly noted that 'there is no mistake of law which immunizes an officer for applying force to a suspect for 'smarting off,' nor to one detained without probable cause or reasonable suspicion."); *Reese v. Herbert,* 527 F.3d 1253, 1272 (11th Cir. 2008) ("[i]n the absence of probable cause, Herbert was not justified in using any force against Reese.").

As established above, probable cause did not exist to arrest Mr. Thomas. Yet Barlow manhandled Mr. Baker, and when Mr. Baker tried to put his cell phone in his pocket so it would not get broken or lost she forced him into overly tightened handcuffs behind his back, over Mr. Baker's protest that "I don't bend so well." (Barlow depo., 90:14 - 91:2; Dkt. 26-1, p. 3 of 21; Decl. Defense counsel, Exhs. E and F). When Russell arrived he recuffed Mr. Baker, again too tightly, as Mr. Baker politely tried to explain.   Russell was entirely unsympathetic and repeated mocked him.   Then, knowing Mr. Baker was elderly and in pain because of the overly tightened cuffs, stuffed him into his elevated truck.   Mr. Baker was visibly in pain and having tremendous difficulty getting in.   Russell eventually placed his hand over Mr. Baker's head and pushed it down, while he tried to lift Mr. Baker's leg.   (Baker depo., 69:20 - 70:24; Exh. G to Decl. Defense counsel).   Russell thereby compressed Mr. Baker's neck and caused him a serious cervical spine injury.   (Baker depo., 26:17 - 28:7, 81:1 - 82:2).

Because the arrest was completely devoid of probable cause, and the alleged crime was so minor and was diffused once Mr. Baker agreed to open his gate and move his truck, *absolutely no force was necessary nor reasonable*.   In the 9th Circuit it is "well-established that overly tight handcuffing can constitute excessive force." *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004).   Consequently, their use of force was excessive as a matter of law.

### III.   BARLOW ARRESTED MR. BAKER IN RETALIATION FOR EXERCISING HIS  1ST AMENDMENT RIGHTS.

The Complaint also alleges that Barlow arrested Mr. Baker in retaliation for disputing her legal authority for force him to open his private property to Barlow's friend, and for refusing to obey Barlow's unlawful orders. (*See, e.g.,* Dkt. 1, p. 6 ¶31; Dkt. 26-1, p. 2 of 21; Barlow Depo., 40:16-20, 76:20-25).   In short, Barlow retaliated against Mr. Baker for answering "No" to her unlawful

commands to permit Nelson to trespass on his property.  This was in violation of and retaliation for Mr. Baker's 1st Amendment right to be free from retaliation for his speech or expressions.[8]

"Ninth Circuit law clearly establishes the right verbally to challenge the police, and verbal protests cannot support an arrest [for resisting/obstructing]." *Velazquez v. City of Long Beach,* 793 F.3d 1010, 1019 (9th Cir. 2015) (citations, internal ellipses, brackets and quotations omitted).  An officer's arrest made in retaliation for an insult, otherwise known as the "offense of *'contempt of cop*,'" "constitute[s] a serious First Amendment violation." *Id.* (emphasis added) (citations omitted).  "While police may resent having obscene words and gestures directed at them . . . they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *Id.* (quoting *Duran,* 904 F.2d at 1378).  "Indeed, an expression of disapproval toward a police officer falls squarely within the protective umbrella of the First Amendment and any action to punish or deter such speech — such as stopping or hassling the speaker — is categorically prohibited by the Constitution." *Id.* (citation, and internal quotations, brackets and ellipsis omitted).[9]

---

[8]In anticipation of an argument from the defendants that the Complaint does not expressly cite the "1st Amendment," the rules require no such citation. The 9th Circuit has repeatedly held that "[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Sagana v. Tenorio,* 384 F.3d 731, 736-37 (9th Cir. 2004).  No magic words, titles, labels, headings, or division into separate counts are necessary; in fact, they are discouraged.  *See Alvarez v. Hill,* 518 F.3d 1152, 1157-58 (9th Cir. 2008).  "[A] complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory." *Brown v. Rawson-Neal Psychiatric Hosp.,* 840 F.3d 1146, 1152 (9th Cir. 2016).

[9]*See also Sharp v. Cty. of Orange,* 871 F.3d 901, 919 (9th Cir. 2017) (retaliation for plaintiff "being so argumentative"); *Ford v. City of Yakima*, 706 F.3d 1188, 1190-91 (9th Cir. 2013) (retaliation for plaintiff for "running [his] mouth," for "an uncooperative attitude) (per curiam), *abrogated on other grounds by Nieves v. Bartlett,* 139 S.Ct. 1715 (2019).

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett,* 139 S.Ct. 1715, 1722 (2019) (citing *Hartman v. Moore,* 547 U.S. 250, 256 (2006)).   "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the  plaintiff's 'subsequent injury.'  It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury.  Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*.

Based on Barlow's own admissions there is no question Mr. Baker's protected conduct was a but-for cause of his arrest, which the 9th Circuit has held as a matter of law would deter a person of ordinary firmness from continuing to engage in that conduct.  Barlow said she wasn't "in the mood" for Mr. Baker's back-talk or for what she characterized as "yelling," "getting all worked up," not "chilling out," for "rais[ing] his voice and sa[ying] 'I am not keeping anyone hostage,'" and for "argu[ing] with me."  In short, she admitted she "did not like the fact that he was not following [her] commands."  (Barlow Depo., 47:3 - 48:23; 73:22 - 74:3, 76:20-25; Dkt. 26-1, pp. 2-3 of 21).  As Plaintiff's expert witnesses so pointedly put it, Barlow's arrest of Mr. Baker "smacks of "**contempt of cop**." (Leach Expert Report, p. 8).

Although a retaliatory arrest claim usually requires proof that the arrest was not supported by probable cause, this is not required "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S.Ct. at 1727.  "For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct

is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Id*.

For all the reasons set forth above, the defendants lacked probable cause. However, Mr. Baker qualifies for *Nieves*' jaywalking exception. Arrests for "false imprisonment" are likely even more rare than jaywalking. The Sheriff himself is unaware of anyone else ever having been arrested in Clearwater County for the crime. (Goetz depo., 39:3-16). "In such a case, [ ] probable cause does little to prove or disprove the causal connection between animus and injury." *Nieves*, 139 S.Ct. at 1727. *See also Henneberry v. City of Newark,* 2019 WL 4194275 (N.D. Cal. 09/04/19) (holding Nieves "jaywalking" exception was satisfied where "records showing that from 2012 to present, there were only 14 citations or bookings for violations" of the trespassing statute.); *Bledsoe v. Ferry County,* 2020 WL 376611 (E.D. Wash. 01/23/20) (same, where plaintiff "alleged that no other person in the city had been prosecuted, imprisoned, or fined for writing on the sidewalk in chalk)*.

Consequently, Mr. Baker is not even required to prove Barlow lacked probable cause (although he already has).

## IV.  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

"Although a right is not clearly established where merely defined at a high level of generality, qualified immunity does not require a case directly on point." *Nicholson v. City of L.A.*, 935 F.3d 685, 690 (9th Cir. 2019). "Instead, the focus is on whether the officer had ***fair notice*** that her conduct was unlawful, for example, through any cases of controlling authority in their jurisdiction at the time of the incident." *Id.* Based upon the case law cited above, many of which rejected similar claims of qualified immunity, Barlow and Russell were clearly on fair notice their conduct was unlawful.

20

RESPECTFULLY SUBMITTED this 24th day of September, 2021.

WOOD LAW GROUP, PC


By:   /s/ _____
      T. Jason Wood, Esq.




**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 22, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Bentley G. Stromberg          bstromberg@clbrmc.com
Attorney for defendants


WOOD LAW GROUP, PC


By:   /s/ _____
      T. Jason Wood, Esq.

21