UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARTHUR BAKER,<br><br>                      Plaintiff,<br><br>     v.<br><br>CLEARWATER COUNTY, CITY OF OROFINO, AMANDA BARLOW, MATT RUSSELL, and CHRIS GOETZ,<br><br>                   Defendants. | Case No. 2:20-CV-00376-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Presently before the Court is Defendants' Motion for Summary Judgment. (Dkt. 28.) The parties have filed responsive briefing. On December 6, 2021, the Court conducted a hearing and took the motion under advisement. As explained below, the Court will grant the motion.

**FACTUAL BACKGROUND[1]**

The events giving rise to this lawsuit occurred on July 30, 2018, when Arthur Baker was arrested for false imprisonment, and for resisting and obstructing a law enforcement officer. At approximately 7:34 a.m. that day, Deputy Amanda Barlow of the

---

[1] The facts stated herein are undisputed unless otherwise noted.

**MEMORANDUM DECISION AND ORDER - 1**

Clearwater County Sheriff's Office (CCSO) was dispatched to Legacy Drive in

Clearwater County, Idaho, for a "disorderly call for service." (Dkt. 26-1); (Dkt. 26-3,

Barlow Depo. at 30-31.) Dispatch informed Deputy Barlow that Christine Nelson had

called to report that she was blocked in behind a gate by her neighbor, Baker, and that

Baker would not let her out of her driveway. (Dkt. 26-1); (Dkt. 26-3, Barlow Depo. at

31.)

Deputy Barlow knew Baker from prior dispatch calls and was friends with Nelson.

Deputy Barlow was aware that Baker and Nelson had ongoing disputes, based on having

responded to a prior dispute herself and having received reports from other deputies. In

July of 2018, the neighbors' disagreement centered on their respective rights to the use of

two roads – a "cutoff" road and a "driveway."

Both Baker and Nelson access their property using Legacy Drive, off of Harmony

Heights Loop Road. Approximately 100 yards before Legacy Drive intersects with

Harmony Heights Loop Road, it splits into two roads – the cutoff road and the driveway.

(Dkt. 29-4, Ex. 2, Barlow Depo.) In 2018, Baker owned the property upon which both the

cutoff road and the driveway exist. It is undisputed that Nelson had an easement to use

the cutoff road. However, the parties disagreed over Nelson's right to use the driveway in

July of 2018.

In 1998, Nelson was granted verbal access to use the driveway by the previous

property owner and has used the driveway since that time. In 2016, Baker purchased the

land containing the driveway. On January 9, 2017, Baker granted Nelson written

permission to use the driveway, conditioned upon her cooperation with keeping the gates

closed and otherwise keeping the property secure. The relationship between Baker and

Nelson later deteriorated, resulting in a series of calls to CCSO dispatch and, ultimately,

the events that occurred on July 30, 2018.

Deputy Barlow was familiar with the layout of the two roads and both Barker's

and Nelson's property prior to July 30, 2018. (Dkt. 26-3, Barlow Depo. at 31-33.) Deputy

Barlow was also aware that Nelson used the driveway to access her property. (Dkt. 26-3,

Barlow Depo. at 33.)

On the morning of July 30, 2018, Baker posted a written notice on the gate of the

driveway revoking Nelson's permission to use the driveway, and parked his pickup truck

in front of the closed gate to prevent Nelson from using the driveway. (Dkt. 29-2, Baker

Depo. at 59.) When Nelson arrived, Baker told Nelson her permission to use the

driveway was revoked and she needed to use the cutoff road. The two argued briefly

before Nelson returned to her vehicle and called CCSO dispatch.

Another neighbor, Todd Perry, arrived at the scene and confronted Baker.[2] A

second neighbor, Darrel Gray, also showed up and spoke with Baker. Baker called his

wife, Diane Baker, and asked her to come to the scene because he was feeling "ganged up

on." (Dkt. 29-2, Baker Depo. at 64-65.) Mrs. Baker arrived in her vehicle and parked

_____

[2] Perry is a former husband of Nelson. Baker asserts Perry was called to the scene by Nelson.
(Dkt. 29-2, Baker Depo. at 61-62.) Perry told Deputy Barlow that he came upon the scene while
he was driving by on his way to work. (Dkt. 26-1.) How and why Perry arrived at the scene is
immaterial to the resolution of this motion.

MEMORANDUM DECISION AND ORDER - 3

behind Nelson's truck.[3]

When Deputy Barlow arrived at the scene, she saw Baker's pickup truck parked

on the driveway road in front of the gate blocking any vehicles from entering or exiting.

(Dkt. 26-1.) Nelson's truck was parked on the other side of the gate, and Diane Baker's

vehicle was parked directly behind Nelson.[4]

 

Photograph 1                                         Photograph 2

Deputy Barlow also observed five individuals were present: Gray, Mr. Baker, Mrs.

Baker, Nelson, and Perry. Upon exiting her patrol vehicle, Deputy Barlow first

encountered Gray and instructed him to leave, which he did. Deputy Barlow next

approached the gate and called for Mr. Baker to come in her direction. At this point, the

---

[3] In this Order, the Court will refer to Plaintiff as "Baker" except for when necessary to distinguish between Plaintiff and his wife, in which case the Court will refer to Plaintiff as "Mr. Baker." Baker's wife will be referred to as "Mrs. Baker."

[4] Photograph 1 shows Nelson's white truck parked on one side of the gate and Baker's green pickup truck parked on the other side of the gate. (Dkt. 26-1, Ex. A at 17, Bates 1.279); (Dkt. 29-11.) Photograph 2 shows Mrs. Baker's car parked behind Nelson's white truck. (Dkt. 26-1, Ex. A at 19, Bates 1.282); (Dkt. 29-11.) The photographs were taken on July 30, 2018. (Dkt. 29-3, Depo. Nelson at 67-68.)

parties' accounts of the events diverge, but the facts of what transpired are consistent and are contained on an audio recording.[5]

Deputy Barlow spoke first with Baker who explained he had put a paper notice on the gate revoking Nelson's permission to use the driveway and Nelson had ripped it off the gate. (Dkt. 25, 26-1, 31.) Deputy Barlow retrieved the notice from the ground near the gate and looked at it. (Dkt. 26-1, 29-3.) Baker told Deputy Barlow he had exclusive legal right to the driveway, he had revoked Nelson's permission to use the driveway, and that Nelson could and should use the cutoff road. (Dkt. 26-1, 31.)

Deputy Barlow responded that Baker could not keep people "hostage like this." (Dkt. 26-1, 31.) The exchange between Baker and Deputy Barlow became more argumentative with Baker maintaining his ownership rights over the driveway and that Nelson should use the cutoff road. (Dkt. 26-5, Ex. E.) Mrs. Baker approached the two and similarly asserted Nelson did not have the right to use the driveway and Nelson should use the cutoff road.

Deputy Barlow next left the Bakers and walked towards Nelson and Perry who were standing a short distance away. Nelson was visibly upset and stated she wanted Barker arrested for disturbing the peace, disorderly conduct, and for threatening her by not allowing her to leave through the driveway gate. Nelson stated she could not go anywhere because Mrs. Baker's car was blocking her truck from behind. (Dkt. 26-5, Ex.

---

[5] Deputy Barlow was wearing an audio recording device that recorded the encounter. (Dkt. 26-5, Ex. E): (Dkt. 26-6, Ex. F.)

E) ("He's got me blocked in," "I can't leave," "I can't go anywhere.") While Deputy

Barlow was talking to Nelson, Baker chain-locked the gate on the driveway.

Deputy Barlow asked Nelson why she could not use the cutoff road. Nelson

initially responded that Baker had chained and padlocked the gate to the cutoff road, but

then Nelson stated she had cut the wire gate to the cutoff road making it possible to drive

through that gate. However, Nelson next stated that the cutoff road had "big holes in the

road which, you know, my truck bottoms out on." (Dkt. 26-5, Ex. E.) Further, Nelson

maintained she had an easement to use the driveway contrary to Baker's assertion.

Deputy Barlow next spoke with Perry who described his exchange with Baker.

Deputy Barlow instructed Perry to move his truck and leave, which he did.

Returning to Mr. Baker, Deputy Barlow inquired whether the gate to the cutoff

road was locked. Baker stated the cutoff road gate was not presently locked and Nelson

had cut the wire gate. After more discussion with Mr. Baker and Mrs. Baker, Deputy

Barlow directed Mrs. Barlow to leave the scene and she did so.

Mr. Baker then told Deputy Barlow that Nelson would need to leave using the

cutoff road and he was not going to let Nelson leave using the driveway. Deputy Barlow

responded, stating: "you need to let her go." (Dkt. 26-5, Ex. E.) Baker stated: "I don't

need to let her go, she can get out that other way." *Id.* The two argued over whether it

was possible for Nelson to use the cutoff road. Baker maintained he could lawfully deny

Nelson access to the driveway and he was protecting his property rights. Deputy Barlow

responded the property dispute was a "civil issue" and that Baker's actions preventing

Nelson from coming and going was a "criminal" matter. *Id.*

MEMORANDUM DECISION AND ORDER - 6

Deputy Barlow directed Baker to unlock the gate and let Nelson pass through the driveway. Baker refused and insisted Nelson needed to take the cutoff road. Baker then turned and walked away from Deputy Barlow towards his pickup truck, stating "I'm going to drive around and show you the other road." *Id.* Deputy Barlow yelled "no, you're gonna unlock this now or you're gonna go to jail for resisting and obstructing." *Id.* Deputy Barlow commanded Baker to unlock the gate to the driveway or go to jail several times. Baker turned and faced Deputy Barlow and stated: "I can tell who your friends with." Deputy Barlow restated her command for Baker to unlock the gate.

Baker then reached for his pocket, stating "I'm going to get a film of you." *Id.* In reaction, Deputy Barlow stated "no, go to jail" and directed Baker to turn around. *Id.* Deputy Barlow grabbed Baker's wrist and placed him in an arm bar. The two struggled while Deputy Barlow attempted to place Baker in handcuffs.[6] During the struggle, Deputy Barlow threatened to use her taser and repeatedly instructed Baker to put his hands behind his back. *Id.* Without the use of a taser, Deputy Barlow was able to handcuff Baker.

Once in handcuffs, Baker continued to argue with Deputy Barlow and stated that he would open the gate for Nelson. *Id.* Deputy Barlow informed him it was "too late." *Id.* Baker complained the handcuffs were painful and too tight. *Id.* Deputy Barlow did not immediately loosen the cuffs, because she was the only officer on scene and because

---

[6] The audio recording provides only what was said during the encounter. The parties dispute whether Barker resisted Deputy Barlow's efforts to place him in handcuffs. (Dkt. 26-5, Ex. E.)

Baker had resisted and refused to comply with her directions. Additionally, Mrs. Baker had returned to the scene at this time and joined Mr. Baker in verbally confronting Deputy Barlow. Once notified that backup would arrive shortly, Deputy Barlow loosened the handcuffs.

When Officer Matt Russell from the City of Orofino Police Department arrived, he placed a different set of handcuffs on Baker.[7] Again, Baker complained the handcuffs were uncomfortable and too tight. Officer Russell advised Baker he could place his finger between the cuff and Baker's wrist to prove the handcuffs were sufficiently loose.

Officer Russell instructed Baker to get in his patrol vehicle, an extended cab pickup. Noticing Baker was having difficulty getting into the patrol pickup, Officer Russell asked if he could assist. Baker suggested to Officer Russell that he lift Baker's leg. Officer Russell approached to help Baker into the patrol truck. The view from the bodycam is obstructed and does not show what happened next. Baker alleges Officer Russell pushed down on Baker's head while lifting his leg, causing serious injury to Baker's cervical spine. (Dkt. 31 at ¶ 16); (Dkt. 29-2, Baker Depo. at 69-70.)[8] Officer Russell testified he does not recall touching Baker's head. (Dkt. 29-5, Russell Depo. at 47.)

---

[7] Officer Russell was wearing a bodycam. His encounter with Plaintiff was video recorded and is in the record at Docket 26-7, Exhibit G.

[8] Baker testified that Officer Russell's actions re-injured a prior cervical spinal injury Baker sustained in a work related accident in 1995. (Dkt. 29-2).

MEMORANDUM DECISION AND ORDER - 8

Baker was transported to jail and issued citations for false imprisonment and resisting or obstructing an officer. (Dkt. 26-1, Ex. A at 7.) A state magistrate judge found probable cause to support the arrest and citations on July 30, 2018. (Dkt. 26-1, Ex. A at 10.) Both charges were later dismissed on motion of the prosecuting attorney. (Dkt. 26-1, Ex. A at 11.)[9]

## PROCEDURAL BACKGROUND

On January 23, 2019, Baker presented a notice of tort claim to the CCSO and to the office of the Clearwater County Commissioners. (Dkt. 26-2, Ex. B.) On July 28, 2020, Baker filed this lawsuit against Clearwater County (the County), the City of Orofino (the City), Deputy Barlow, Officer Russell, and Sheriff Goetz. (Dkt. 1.) The Complaint alleges federal claims under 42 U.S.C. Section 1983 against the individual defendants, Deputy Barlow and Officer Russell, for unlawful arrest, malicious prosecution, and excessive use of force in violation of the Fourth Amendment; and retaliatory arrest in violation of the First Amendment against Deputy Barlow. The Complaint also alleges Section 1983 *Monell* claims against the entity defendants, the County and the City. Finally, the Complaint asserts a state law tort claim for emotional distress against all Defendants.

---

[9] The parties dispute the validity and preclusive impact of the prior judicial probable cause determination and the dismissal of the citation. *See* (Dkt. 34 at 3) (asserting the prior probable cause determination, while not binding, was correct); (Dkt. 30 at 14-15) (challenging that the Deputy Barlow withheld material information from the magistrate judge). The Court does not address this issue because the finding of probable cause to arrest is based on the facts known to Deputy Barlow at the scene, not the magistrate judge's determination. Further, "the mere fact that a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

On September 3, 2021, Defendants filed the motion for summary judgment presently before the Court. On November 5, 2021, Baker filed a motion for partial summary judgment. (Dkt. 36.) The Court struck Baker's motion for partial summary judgment as untimely, but granted Baker leave to exceed the page limitations in responding to Defendants' motion for summary judgment, clarifying that the Court would consider all of the materials filed by Baker. (Dkt. 42.)[10] Having reviewed and considered the entire record and the arguments of counsel, the Court will grant Defendants' motion for summary judgment for the reasons explained below.

## STANDARD OF LAW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For summary judgment purposes, an issue must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation; an issue is "genuine" if it must be established by "sufficient evidence supporting the claimed factual dispute ... to

---

[10] Baker's motion for partial summary judgment did not raise any new arguments that were not asserted in Baker's responsive briefs. (Dkt. 36.) Indeed, the motion for partial summary judgment was based entirely on the materials filed in response to Defendants' motion for summary judgment, all of which the Court has considered. (Dkt. 29, 30, 31, 32, 36.)

require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also British Motor. Car Distrib. v. San Francisco Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989).

Summary judgment under Rule 56 is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete[ ] failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

In considering a motion for summary judgment, a court does not make findings of fact or determine the credibility of witnesses. *See Anderson*, 477 U.S. at 255. Rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).

## DISCUSSION

Baker raises both state and federal claims in this action. The Court will address the merits of the motion as it applies to the federal claims, followed by the state claims.

I.      **Federal Claims – 42 U.S.C. Section 1983**

The purpose of 42 U.S.C. Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To establish a prima facie case under Section 1983, a plaintiff must allege two essential elements: 1) that a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Baker brings two types of Section 1983 claims: 1) constitutional claims against the individual Defendants, and 2) a *Monell* claim against the County and the City. The Court will address each claim in turn.

A.      **Constitutional Claims Against the Individual Defendants**

Baker asserts that: 1) his arrest and prosecution were unlawful and in violation of the Fourth Amendment because they were not supported by probable cause; 2) Deputy Barlow arrested Baker in retaliation for asserting his First Amendment rights; and 3) both arresting officers used excessive force in violation of the Fourth Amendment. Defendants argue there was no violation of Baker's constitutional rights and that they are entitled to qualified immunity.

1)      **There Was Probable Cause to Arrest and Prosecute Baker**

Baker argues he was unlawfully arrested and maliciously prosecuted, because there was no probable cause to believe he had committed a crime.

**MEMORANDUM DECISION AND ORDER - 12**

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1918 (9th Cir. 2015) (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & Cnty.* of S.F., 266 F.3d 959, 964 (9th Cir. 2001))). To prevail on a malicious prosecution claim, a plaintiff "must show that the defendants prosecuted [him or] her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). The existence of probable cause is dispositive of the false arrest and malicious prosecution claims. *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009) (A finding of probable cause "is an absolute defense to malicious prosecution" or false arrest claims against a police officer.); *Fortson v. Los Angeles City Attorney's Office*, 852 F.3d 1190, 1194 (9th Cir. 2017) (same).

Probable cause for a warrantless arrest exists if, under the totality of the facts and circumstances known to the arresting officer, "a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Struckman*, 603 F.3d 731, 739–40 (9th Cir. 2010) (quoting *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir. 1984)). The arresting officer must have "a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life, that a crime has been, is being, or is about to be committed." *Johnson v. Hawe*, 388 F.3d 676, 681 (9th Cir. 2004) (quoting *Hopkins v. City of Sierra Vista*, 931 F.2d 524, 527 (9th Cir. 1991)).

MEMORANDUM DECISION AND ORDER - 13

An officer may make a warrantless arrest when the officer has probable cause to believe that a person has committed a crime in the officer's presence. *State v. Bishop*, 203 P.3d 1203, 1215 (Idaho 2009) (citing *Virginia v. Moore*, 553 U.S. 164, 176–77 (2008)). Here, Baker was arrested and cited for false imprisonment and for resisting and obstructing a law enforcement officer.

### a.       False Imprisonment – Idaho Code Section 18-2901

Under Idaho Code Section 18-2901, "[f]alse imprisonment is the unlawful violation of the personal liberty of another." The Idaho Criminal Jury Instructions in turn provides, as relevant here, that to be guilty of false imprisonment the defendant must: 1) unlawfully, and 2) violate the right of another to come and go or to stay when or where the individual wanted. ICJI 1233.[11]

Based on the totality of the undisputed facts known to Deputy Barlow at the time, the Court finds that Deputy Barlow had probable cause to believe that Baker had falsely imprisoned Nelson in violation of Idaho Code Section 18-2901. Deputy Barlow was dispatched to the scene upon a report of a "disorderly call for service." (Dkt. 26-1.) Dispatch advised Deputy Barlow that Nelson called and reported that Baker would not allow Nelson out of her driveway. (Dkt. 26-1.)

When Deputy Barlow arrived on scene, she observed that Nelson's truck was completely blocked in on Legacy Drive by Mr. Baker's pickup truck and Mrs. Baker's

---

[11] The complete list of elements for the crime of false imprisonment are: 1) on or about [date]; 2) in the state of Idaho; 3) the defendant, unlawfully; 4) violated the right of an individual to come and go or to stay when or where the individual wanted. ICJI 1233.

**MEMORANDUM DECISION AND ORDER - 14**

vehicle. Nelson was sitting inside her truck. Perry was standing next to Nelson's truck. Mr. Baker was standing in front of Nelson's truck using his cell phone to video tape Nelson and Perry. (Dkt. 26-1.) Mrs. Baker and Gray were standing away from the other individuals on Harmony Heights Loop Road.

Deputy Barlow spoke with each of the individuals at the scene to ascertain what was presently occurring and what had transpired prior to her arrival. How the individuals described the events differed, but the facts of what had occurred were consistent. There is no dispute, by all accounts, that when Deputy Barlow arrived on scene, Nelson was unable to move her vehicle and thereby leave the area, because she was blocked in by the Bakers' vehicles. At that point, when taking the facts in the light most favorable to Baker, Deputy Barlow had sufficient trustworthy information to reasonably believe that probable cause existed to find Baker had committed the offense of false imprisonment based on her own observations and her investigation.

Baker's arguments to the contrary disputing whether Nelson could leave using the cutoff road are immaterial to the determination of whether probable cause existed at the time Deputy Barlow arrived. (Dkt. 30.) When Deputy Barlow arrived on scene, Nelson was plainly blocked in and forced to remain where she did not wish to be, and was prevented from leaving or moving her truck by Baker. There was, therefore, probable cause for false imprisonment at that time.

Further, the disputed facts raised by Baker concerning whether Nelson could have left the scene using the cutoff road do not dispel the existence of probable cause, because Nelson was unquestionably blocked from accessing the cutoff road at least until after

Deputy Barlow directed Mrs. Baker to leave. Indeed, prior to Mrs. Baker moving her vehicle, Nelson was unable to move her vehicle in either direction, making both the driveway and the cutoff road inaccessible to Nelson. Thus, the disputed facts concerning whether Nelson could have used the cutoff road after Mrs. Baker moved her vehicle are immaterial to the Court's determination that probable cause existed when Deputy Barlow arrived on scene and Nelson's vehicle was completely blocked in.

Further, Baker's assertions that he could lawfully prevent Barlow from using the driveway and his other claims of innocence are likewise immaterial to the determination of whether probable cause existed at the time Deputy Barlow arrived on scene.

Probable cause means a "fair probability," not "certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). The existence of factual disputes regarding the respective property rights of the parties does not prevent the Court from determining that probable cause existed on summary judgment. Whether the police had probable cause is a mixed question of fact and law. *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999). The issue is therefore subject to determination on summary judgment where, such as here, the material facts (e.g., the relevant information known to the arresting officers) are not genuinely disputed. *See Peng v. Penghu*, 335 F.3d 970, 978–80 (9th Cir. 2003). Here, the relevant facts known to Deputy Barlow when she arrived at the scene are that Nelson was blocked in by the Bakers and unable to leave.

MEMORANDUM DECISION AND ORDER - 16

Baker contends that Deputy Barlow failed to conduct a sufficient investigation, instead simply accepting the disputed accusations of her friend, Nelson.[12] The Court disagrees.

"In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he [or she] was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). However, the police need only conduct "a reasonable investigation under the circumstances." *Peng*, 335 F.3d at 979. "A sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator." *Id.* at 976-78.

"Once probable cause to arrest someone is established . . . , a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.'" *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (quoting *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)). "An officer is not entitled to a qualified immunity defense, however, where exculpatory evidence is ignored that would negate a finding of probable cause." *Id.*

---

[12] Baker's assertions regarding the fact that Deputy Barlow and Nelson were friends is irrelevant to the probable cause determination, which is an objective inquiry where the officer's subjective motivations are not considered. *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (Probable cause to arrest is based on an objective standard, the officers subjective intent is irrelevant.).

Here, Deputy Barlow conducted a reasonable investigation under the circumstances before arresting Baker. Deputy Barlow spoke with both of the Bakers and Nelson. Baker's assertion of a legal right to preclude Nelson from use of the driveway was contested by Nelson who maintained that she had an easement to use the driveway. It is undisputed that Nelson had used the driveway prior to July 30, 20, 2018, which Deputy Barlow knew. Deputy Barlow readily acknowledged that the property dispute between the Bakers and Nelson was a "civil matter," but that Baker's confinement of Nelson at the gate was a "criminal matter." That is to say, even if the Bakers had a legal right to revoke Nelson's permission to use the driveway, Baker did not have the right to confine Nelson and prevent her from moving or leaving altogether. The Court finds no further investigation into the property dispute was necessary.

Further, the officers in this case did not turn a blind eye to exculpatory evidence that would negate a finding of probable cause and did not have facts that should have reasonably caused them to investigate further. The circumstances evident to Deputy Barlow when she arrived on scene, as described above, plainly showed that Nelson was confined to her present location by Baker. Deputy Barlow inquired of each individual present at the scene to ascertain an understanding of what had transpired. While the individuals' descriptions of the events differed, the facts establishing probable cause did not. Baker had confined Nelson against her will by blocking Nelson's vehicle on the road and preventing Nelson from leaving. Even if Nelson could have used the cutoff road as Mr. Baker contended, Nelson was nonetheless prevented from doing so at that time because she was blocked from behind by Mrs. Baker's car.

That it was Mrs. Baker's car blocking Nelson from accessing the cutoff road, does not negate the existence of probable cause. Nelson's confinement was the direct result of Mr. Baker's actions. It is undisputed that Mrs. Baker arrived at the scene after being called by Mr. Baker, a fact which Deputy Barlow had been told by Mr. Baker himself. (Dkt. 31 at ¶ 12.) Mr. and Mrs. Baker acted in concert to restrict Nelson's ability to move or leave, ostensibly to prevent Nelson from using the driveway. During Deputy Barlow's efforts to investigate the dispute and diffuse the situation, the Bakers presented a united front in asserting their right to revoke Nelson's permission to use the driveway and insisting that Nelson must use the cutoff road. It was therefore reasonable for Deputy Barlow to conclude that Mr. Baker's actions had caused Nelson to be blocked in at the gate.

In sum, probable cause was established based on the facts and circumstances plainly evident to Deputy Barlow at the time she arrived on scene. Deputy Barlow was not required to investigate or resolve the civil property dispute between the Bakers and Nelson, nor would any further investigation have dispelled the facts and circumstances giving rise to probable cause for false imprisonment. Probable cause was not erased when Mrs. Baker moved her vehicle. That Nelson was no longer blocked in and, arguably, able to leave once Mrs. Baker's vehicle was removed, does not negate the probable cause that existed when Deputy Barlow arrived.

For these reasons, the Court finds Deputy Baker had probable cause to believe that Baker had committed the offense of false imprisonment based on the totality of the facts known at the time.

**MEMORANDUM DECISION AND ORDER - 19**

> **b.**     **Resisting and Obstructing – Idaho Code Section 18-705**

Idaho Code Section 18–705, makes it a crime to "willfully resist[ ], delay [ ] or obstruct[ ] any public officer, in the discharge, or attempt to discharge, ... any duty of his [or her] office." Idaho Code § 18–705. Three elements must be satisfied to find a violation of the statute: "(1) the person who was resisted, delayed or obstructed was a law enforcement officer; (2) the defendant knew that the person was an officer; and (3) the defendant also knew at the time of the resistance that the officer was attempting to perform some official act or duty." *State v. Bishop*, 203 P.3d 1203, 1215 (Idaho 2009) (quoting *State v. Adams*, 138 Idaho 624, 629, 67 P.3d 103, 108 (Ct. App. 2003)).

There is no dispute that Deputy Barlow was a law enforcement officer and that Baker was aware of that fact. The issue presented here as to whether Baker's arrest for resisting and obstructing was lawful, depends on whether Deputy Barlow was engaged in a lawful "duty" under the meaning of Section 18–705.

The term "duty" as used in Idaho Code Section 18–705 encompasses only "'those lawful and authorized acts of a public officer.'" *State v. Fields*, 479 P.3d 450, 460 (Idaho Ct. App. 2020) (quoting *State v. Wilkerson*, 755 P.2d 471, 477 (Idaho Ct. App. 1988)). "Consequently, where an individual refuses to obey an order or peacefully obstructs an act of a public officer that is contrary to the law, be it statute or constitution, that individual does not violate Section 18–705." *State v. Gamma*, 152 P.3d 622, 625 (Idaho Ct. App 2006); *see also State v. Bishop*, 203 P.3d at 1216. "An individual may not, however, use force or violence to resist." *Bishop*, 203 P.3d at 1216.

Here, as explained above, Deputy Barlow had probable cause to believe Barker had unlawfully restrained Nelson by preventing her from leaving and, therefore, had probable cause to arrest Baker for false imprisonment. As such, Deputy Barlow was engaged in the performance of her lawful duties when she directed Barker to open the gate and allow Nelson to drive through in an attempt to resolve the dispute.

From the time she arrived, Deputy Barlow worked to diffuse the heated confrontation. Deputy Barlow interviewed everyone at the scene, repeatedly told all of the individuals, who were each agitated and contentious, to "calm down," and cleared the scene of the unnecessary individuals.

When Deputy Barlow ordered Baker to open the gate, the dispute remained heated and unresolved. Critically, Baker's apparent false imprisonment of Nelson was continuing as Nelson was still restrained from leaving by Baker based on the belief that Nelson could not use the cutoff road or that Nelson had the right to use the driveway. Even if that belief was mistaken, it was reasonable for Deputy Barlow to conclude there was probable cause that Barker had committed or was in the midst of committing the crime of false imprisonment by preventing Nelson from leaving. Thus, Deputy Barlow's command that Baker open the gate was lawfully made in the course of her duties as a law enforcement officer. *State v. Wilkerson*, 755 P.2d 471, 476 (Idaho Ct. App. 1988) (citing Idaho Code Section 31-2202 duties of sheriff include to preserve the peace and to prevent and suppress all affrays, breaches of the peace.). By refusing to comply and walking

**MEMORANDUM DECISION AND ORDER - 21**

away from Deputy Barlow, Barker impeded and delayed Deputy Barlow from performing her official duties.[13]

Baker maintains that Deputy Barlow's command to open the gate and allow Nelson to drive through it was an unlawful command, because Baker possessed the legal right to prevent Nelson from using the driveway. Thus, Baker argues, he was justified in refusing to obey and peacefully resisting Deputy Barlow's direction that he open the gate.

However, Baker's subjective belief regarding the lawfulness of Deputy Barlow's command is not an element of the offense of resisting and obstructing an officer. *State v. Orr*, 335 P.3d 51, 56 (Idaho Ct. App. 2014).[14] "Rather, what is required is that the officer was, in fact, lawfully attempting to perform some official act or duty and that the defendant knew that the officer was attempting that act." *Id.* An officer carrying out "lawful and authorized acts of a public officer" is performing an official duty under Idaho Code Section 18-705. *State v. Bishop*, 203 P.3d at 1216. Here, Deputy Barlow's command directing Baker to open the gate was given in the course of her lawful duties as a law enforcement officer responding to the dispatch call and based on the existence of

---

[13] The Court's determination in this regard is limited to Baker's refusal to comply with Deputy Barlow's command to open the gate and allow Nelson to drive through it. Summary judgment is not appropriate to the extent the arrest under Idaho Code Section 18-705 was based on a claim that Baker resisted Deputy Barlow's efforts to place him in handcuffs and under arrest, because there are factual disputes at issue concerning whether Baker resisted.

[14] The same is true with regard to Baker's contentions that Deputy Barlow's friendship with Nelson or other subjective motivations were unlawful. As discussed later in this Order, the subjective beliefs of Deputy Barlow are irrelevant to the objective inquiry for determining the lawfulness of the officer's actions.

probable cause for false imprisonment. Accordingly, there was probable cause to arrest Barker for resisting and obstructing.

### c.   Officer Russell

Baker argues Officer Russell unlawfully arrested him, because Officer Russell failed to conduct a further investigation to ensure there was probable cause when he arrived on scene. The Court disagrees.

It is undisputed that Officer Russell arrived after Baker already had been arrested and had no part in Baker's arrest. Officer Russell's involvement was limited to assisting Deputy Barlow by re-handcuffing Baker and transporting him to jail.

Officer Russell did not violate Baker's constitutional rights by failing to conduct his own investigation. While officers "have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if sufficient details are relayed," "'[w]here an officer has an objectively reasonable, good-faith belief that he [or she] is acting pursuant to proper authority, [the officer] cannot be held liable if the information supplied by other officers turns out to be erroneous.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008) (quoting *Motley v. Parks*, 432 F.3d 1072, 1081–82 (9th Cir. 2005) (overruled on other grounds by *United States v. King*, 687 F.3d 1189 (9th Cir. 2012)). "The lynchpin is whether the officer's reliance on the information was objectively reasonable." *Id*.

Here, Baker has not identified any facts showing Officer Russell did not have an objectively reasonable, good faith belief that Deputy Barlow's arrest of Baker was lawful. Indeed, the Court has concluded that probable cause existed for Baker's arrest. There is

no evidence that the facts and circumstances known to Officer Russell at the time would have alerted a reasonable officer in his situation of the need to conduct a further investigation. For these reasons, the Court finds Officer Russell did not unlawfully arrest Baker.

### d.     Conclusion

Because there was probable cause to arrest Baker, there was no constitutional violation resulting from Baker's arrest or prosecution.[15] Accordingly, the claims of unlawful arrest and malicious prosecution against both Deputy Barlow and Officer Russell fail as a matter of law. *Lassiter*, 556 F.3d at 1054-55; *Fortson*, 852 F.3d at 1194.

### 2)     Retaliatory Arrest

Baker argues his arrest was conducted in retaliation for disputing and refusing to obey Deputy Barlow's orders to open the gate in violation of his First Amendment rights. (Dkt. 30 at 17.) Defendants contend the retaliation claim fails as a matter of law, because probable cause existed for Baker's arrest. Baker maintains that, even if there was probable cause, a narrow exception applies under the circumstances presented here. (Dkt. 34.)

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*,

---

[15] The Court also finds there is no evidence of malice, which is fatal to the claim of malicious prosecution. There was a reasonable and objective basis for Deputy Barlow to believe, even if mistakenly, that probable cause existed. The evidence relied on by Baker to show that Deputy Barlow's arrest and citation were motivated by her friendship with Nelson or for retaliatory reasons, even if true, do not rise to the level of malice.

139 S.Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "If

an official takes adverse action against someone based on that forbidden motive, and

'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the

injured person may generally seek relief by bringing a First Amendment claim." *Id*. To

establish a First Amendment retaliation claim, a plaintiff must show that (1) they engaged

in constitutionally protected activity, (2) as a result, they were subjected to adverse action

by the defendant that would chill a person of ordinary firmness from continuing to

engage in the protected activity, and (3) there was a substantial causal relationship

between the constitutionally protected activity and the adverse action. *Blair v. Bethel Sch.*

*Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

      The third element is dispositive here. That element requires a plaintiff to "establish

a 'causal connection' between the government defendant's 'retaliatory animus' and the

plaintiff's 'subsequent injury.'" *Nieves*, 139 S.Ct. 1722 (quoting *Hartman*, 547 U.S. at

259). "It is not enough to show that an official acted with a retaliatory motive and that the

plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-

for' cause, meaning that the adverse action against the plaintiff would not have been

taken absent the retaliatory motive." *Id*. (citing *Hartman*, 547 U.S. at 260).

      Generally, the presence of probable cause defeats the but-for causation analysis in

a retaliatory arrest context. *Id.* at 1724-25 (2019) ("Because there was probable cause to

arrest [plaintiff], [the] retaliatory arrest claim fails as a matter of law."). This is because

"probable cause speaks to the objective reasonableness of an arrest" and, as such, "its

absence will . . . generally provide weighty evidence that the officer's animus caused the

arrest, whereas the presence of probable cause will suggest the opposite." *Id.* at 1724

(citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2001)). Thus, a "plaintiff pressing a

retaliatory arrest claim must plead and prove the absence of probable cause for the

arrest." *Id.* at 1724. As part of this inquiry, "[a] particular officer's state of mind is simply

'irrelevant,' and it provides 'no basis for invalidating an arrest.'" *Id.* at 1725 (quoting

*Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004)).

However, the Supreme Court in *Nieves* recognized a "narrow" exception may exist

"where officers have probable cause to make arrests, but typically exercise their

discretion not to do so." *Id.* at 1727. Stated differently, probable cause does not

necessarily defeat a claim for retaliatory arrest "when a plaintiff presents objective

evidence that he [or she] was arrested when otherwise similarly situated individuals not

engaged in the same sort of protected speech had not been." *Id.* (discussing an arrest for

jaywalking as an example); *see also Ballentine v. Las Vegas Metropolitan Police Dep't*,

480 F.Supp.3d 1110, 1115–16 (D. Nevada 2020) (involving an arrest for chalking

sidewalks). Again, "[b]ecause this inquiry is objective, the statements and motivations of

the particular arresting officer are irrelevant at this stage." *Id.*

As discussed above, probable cause existed for Baker's arrest. Consequently, the

retaliatory arrest claim fails as a matter of law under the general rule of *Nieves*. *See*

*Nieves*, 139 S.Ct. at 1724-25.

Baker argues the absence of probable cause is not fatal to his claim, because the

*Nieves* exception applies. To that end, Baker relies on Sheriff Goetz's deposition

testimony stating that Sheriff Goetz is "unaware of anyone else ever having been arrested

in Clearwater County for [false imprisonment.]" (Dkt. 30 at 20.)[16] Thus, Baker contends, the existence or lack of probable cause in this case does not prove or disprove the causal connection between a retaliatory animus and his constitutional injury. The Court disagrees.

Taking Sheriff Goetz' deposition testimony as true, it is objective evidence supporting application of the *Nieves* exception. However, even if the exception applies, Baker has failed to identify evidence upon which a reasonable jury could conclude that his protected conduct, e.g., his refusal to follow Deputy Barlow's order, was the but-for cause of his arrest.

Baker relies on two piece of evidence to establish causation. First, Baker contends that Deputy Barlow's own statements are evidence that the arrest was retaliatory. (Dkt. 30 at 19.) However, the subjective state of mind and the "statements and motivations of the particular arresting officer are irrelevant" to the inquiry. *Nieves*, 139 S.Ct. at 1727-28 ("[T]he test is whether the information the officer had at the time of making the arrest gave rise to probable cause."). Again, a reasonable officer in Deputy Barlow's position could have concluded that Baker had committed the crime of false imprisonment.

Second, Baker points to the conclusion of his retained expert, Edward Leach, that the arrest "smacks of 'contempt of cop.'" (Dkt. 30 at 19) (citing Dkt. 29-14 at p. 8.)

---

[16] Sheriff Goetz's actual deposition testimony is slightly different than characterized in Baker's response brief. *Compare* (Dkt. 30 at 20); (Dkt. 29-6, Goetz Depo. at 39.) Sheriff Goetz did not testify to being unaware of "anyone else ever having been" arrested for false imprisonment. Rather, Sheriff Goetz stated he was unaware of any arrest where County deputies had charged a citizen involved in a civil dispute with false imprisonment for restricting their movement.

However, Mr. Leach's "contempt of cop" conclusion is based on Baker's assertion that Deputy Barlow's command was unlawful, due to Baker's property rights and Deputy Barlow's friendship with Nelson. As discussed previously, both of these assertions are immaterial to the probable cause determination.

Neither Baker's claim of a property right nor Deputy Barlow's friendship with Nelson disprove the existence of probable cause for the arrest. Therefore, Mr. Leach's reliance on these two contentions as the bases for his contempt of cop conclusion likewise do not negate the probable cause for Baker's arrest or the weighty evidence that the presence of probable cause provides to show the arrest was not motivated by any retaliatory animus. *Nieves*, 139 S.Ct. at 1724. Consequently, Mr. Leach's conclusion does not support a finding that Deputy Barlow's lawful arrest based on probable cause would not have happened but for Baker's speech.

Accordingly, Baker has failed to identify evidence upon which a reasonable jury could conclude that his arrest was retaliatory. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322-23. The retaliation claim therefore does not survive summary judgment.

### 3)    Excessive Force

Baker alleges Deputy Barlow and Officer Russell used excessive force to effectuate the arrest. Specifically, Baker claims that no amount of force was warranted, because the arrest was unlawful. Defendants contend that the force used was reasonable.

As an initial mater, the Court rejects Baker's assertion that no force was warranted because there was no probable cause to arrest. That contention has been squarely rejected. *Velazquez*, 793 F.3d at 1024 (stating "[b]ecause the excessive force and false

arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa.") (quoting *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) and citing *Mattos*, 661 F.3d at 443 n. 4 (rejecting plaintiff's argument that "any amount of force against her" was excessive if the officers did not have probable cause, as the absence of probable cause alone is insufficient to establish excessive force)). Further, as determined above, there was probable cause for Baker's arrest.

Rather, a claim of "excessive force arises under the Fourth Amendment and constitutes a claim concerning the overall reasonableness of a seizure." *Velazquez*, 793 F.3d at 1024 (citing *Graham v. Connor*, 490 U.S. 386, 394–97 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. (citing *Graham supra*) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7–8, 105 (1985)).

It "'requires careful attention to the facts and circumstances of each particular case,' including the consideration of the factors set forth in *Graham*: the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. "Underlying *Graham's* objective-reasonableness test is the clear principle that the force used to make an arrest must be balanced against the need for force: it is the

need for force which is at the heart of the *Graham* factors." *Id.* (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)).

Summary judgment for a claim of excessive force is appropriate if the Court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under all circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Determinations of unreasonable force "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Here, Baker claims Deputy Barlow's use of an arm bar and tight placement of the handcuffs on Baker were excessive. Baker further claims Officer Russell used excessive force by placing the second set of handcuffs on Baker's wrists too tightly and by placing his hand on top of Baker's head while lifting Baker's leg to assist him in entering the patrol truck.

The parties characterized the force used by the officers differently. Viewing the evidence in the light most favorable to Baker, the Court finds there is no evidence that any of the officers' actions constitutes excessive force. That is to say, the force used by the officers was objectively reasonable under the circumstances to effectuate Baker's arrest and transport to jail.

First, Deputy Barlow's use of an arm bar was reasonable. At that time, Deputy Barlow was the only officer on scene and she reacted to detain Baker when he began to reach for his pocket. Leading up to that moment, Baker had refused to follow Deputy

MEMORANDUM DECISION AND ORDER - 30

Barlow's commands, was argumentative, and was agitated. Under these circumstances, the use of an arm bar was reasonable given Deputy Barlow's concerns for her safety.

Next, Deputy Barlow placed Baker in handcuffs. Baker advised Deputy Barlow that the handcuffs were too tight and painful. For officer safety reasons, Deputy Barlow told Baker she would loosen or adjust the handcuffs once backup arrived. Deputy Barlow adjusted the handcuffs when dispatch advised that backup was near. Officer Russell arrived shortly thereafter and placed Baker in another set of handcuffs.[17] Again, Baker complained that the new handcuffs were too tight. Officer Russell checked the handcuffs, and confirmed that he could insert his finger between the cuffs and his wrist, and determined that Baker would be able to get free if he loosened them any further.

Upon these facts, the Court finds the officers' use of handcuffs was not excessive force. "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Harmon v. City of Pocatello*, 431 F.Supp.3d 1135, 1155 (D. Idaho 2020) (citing *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998); *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990); *Martin v. Gentile*, 849 F.2d 863, 869–70 (4th Cir. 1988)). "[E]ven if serious injuries result from normal handcuffing techniques due to a preexisting condition, there can be no constitutional violation unless officers knew of the condition." *Id.* (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1351–53 (11th Cir. 2002)). "While a reasonable use of force is not made

---

[17] Officer Russell's actions and statements during the re-handcuffing of Baker are captured on the bodycam video. (Dkt. 26-7, Ex. G.)

'unreasonable' simply because the arrestee is injured, the fact and severity of the injury or injuries, can be evidence that the force applied was excessive." *Forester v. City of Osburn, Idaho by and through City Council*, 2010 WL 11651375, at *5 (D. Idaho 2010).

Here, Baker complained that the handcuffs were too tight, painful, pinching, and uncomfortable. Baker alleges his wrists were "seriously injured" as a result of the handcuffing. However, Baker does not specify what injuries he suffered and provides no evidence of any wrist injury. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("[S]ummary judgment . . . is merited if a plaintiff does not seek medical help or offer supporting documentary evidence."). Further, there is no evidence that the officers were aware of any preexisting wrist condition that may have precipitated a serious injury.

Instead, the evidence shows that Deputy Barlow and Officer Russell adjusted the handcuffs as circumstances allowed to ensure they were not too tight. Even if Baker suffered minimal or nominal injuries as a result of the routine handcuffing, which there is no evidence of, such injury does not support an excessive force claim. *Harmon*, 431 F.Supp.3d at 1155-56. Accordingly, the Court finds both officers' use of handcuffs was reasonable and that there is no evidence of excessive force. *Id.* ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal.").

There are, however, disputed facts regarding whether Officer Russell pushed down on Baker's head causing injury to Baker's spine. The deposition testimony of Baker and Officer Russell on this point is conflicting. (Dkt. 29-2, Ex. 1); (Dkt. 29-5, Ex. 4.) The bodycam footage of the occurrence does not definitively show whether and to what

extent Officer Russell pushed down on Baker's head. The video shows Baker having difficulty entering Officer Russell's patrol truck, which was an extended cab pickup truck. (Dkt. 26-7, Ex. G.) Officer Russell offered to assist and Baker responded by suggesting that Officer Russell lift Baker's leg. (Dkt. 26-7, Ex. G.) Officer Russell then approached Baker and can be seen on the bodycam helping Baker into the patrol truck. Even assuming Baker's version of the events is true, however, there is no evidence indicating that excessive force was used.

Officer Russell was unaware of Baker's previous cervical injury. Baker advised the officers only that he did not "bend very well." (Dkt. 26-7, Ex. G.) Officer Russell's alleged act of pushing down on Baker's head for approximately five seconds to help him get into the patrol vehicle was not unreasonable. (Dkt. 29-2, Baker Depo. at 70) (Baker estimated that Officer Russell's hand was on Baker's head for "probably five seconds."). Officers frequently assist individuals into their patrol vehicles. Because Officer Russell did not know of Baker's prior injury, it was not unreasonable for Officer Russell to briefly place his hand on Baker's head to assist him.

Based on the foregoing, the Court finds there is no evidence from which a reasonable jury could find that Deputy Barlow or Officer Russell used excessive force in effectuating Baker's arrest. The motion for summary judgment will be granted on this claim.

### 4)    Qualified Immunity

Deputy Barlow and Officer Russell are entitled to qualified immunity on the Section 1983 claims brought against them individually.

An officer sued under Section 1983 is entitled to qualified immunity from suit, unless the officer's conduct 1) violated a constitutional right, and 2) that constitutional right was clearly established at the time of the officer's actions. *Tuuamalemalo v. Greene*, 946 F.3d 471, 476–77 (9th Cir. 2019); *see also Broam*, 320 F.3d at 1028 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A constitutional right is clearly established at the time of the incident only if "the right's contours [are] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks omitted). This means that the reviewing court must not define the right "at a high level of generality"; there must be clearly established law providing guidance based on similar factual scenarios. *Id*. at 1152 (internal quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that their conduct was illegal. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (A government official is entitled to

qualified immunity on a claim for false arrest or malicious prosecution if a reasonable officer in his or her position could have believed probable cause existed.).

Here, as discussed above, there was no violation of a clearly established constitutional right. Probable cause existed to arrest Baker, the arrest was not retaliatory, and the officers did not use excessive force. Thus, both of the officers are entitled to qualified immunity on the Section 1983 claims brought against them individually.

Alternatively, if a constitutional violation occurred, a finding that Deputy Barlow and Officer Russell are entitled to qualified immunity is appropriate, because the officers reasonably believed that their conduct complied with the existing law, even if their belief was mistaken. *Mottos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) ("Qualified immunity shields an officer from liability even if his or her action resulted from a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."). That is to say, there is no clearly established law identified by either party that would have given any reasonable officer in the same circumstance fair notice that their actions violated Baker's constitutional rights. *Nicholson v. City of L.A.*, 935 F.3d 685, 690 (9th Cir. 2019). The officers reasonably concluded that there was probable cause to arrest Baker and, therefore, the arrest was lawful and not retaliatory. Further, neither officer used excessive force.

The circumstances presented here are distinct from the facts in the case relied upon by Baker, *Demuth v. County of Los Angeles*, 798 F.3d 837 (9th Cir. 2015) ("An unreasonable mistake of fact does not provide the basis for qualified immunity."). (Dkt. 44.) In *Demuth*, a deputy sheriff briefly arrested a public defender who was present in her

office at the courthouse but had ignored calls from the court requesting the attorney's presence for a hearing. The officer located the attorney and advised that she needed to appear in the courtroom immediately. After a brief verbal exchange, the attorney refused and the officer handcuffed the attorney and escorted her to the courtroom where he then removed the handcuffs.

The Ninth Circuit concluded in *Demuth* that the officer could "not reasonably have believed that he had one of the usual Fourth Amendment justifications for the arrest" and, therefore, was not entitled to qualified immunity based on any mistaken belief. *Id.* at 839. That is not the case here. Deputy Barlow reasonably believed she had probable cause to arrest Baker. Likewise, Officer Russell was reasonable in concluding Baker's arrest was lawful and his actions in re-handcuffing and transporting Baker to the jail were justified.

For these reasons, the Court finds Deputy Barlow and Officer Russell are entitled to qualified immunity on the individual Section 1983 claims.

### B.    *Monell* Claim

In addition to the Section 1983 constitutional claims asserted against the individual defendants, Baker asserts Section 1983 *Monell* claims against the entity Defendants.[18]

---

[18] Baker's response brief addressing the *Monell* claim appears to raise a supervisory liability claim against Sheriff Goetz. (Dkt. 29 at 5-8.) Because there was no deprivation of Baker's constitutional rights, however, any supervisory liability claim also fails. *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (there is no supervisory liability if there is no underlying constitutional violation).

A local governmental entity may be liable under Section 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). However, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 692.

To state a *Monell* claim, a plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)). If no constitutional violation occurred, then a municipal liability claim fails under § 1983. *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (a *Monell* claim cannot survive without an underlying constitutional violation). Such is the case here.

As discussed above, there was no deprivation of any constitutional right. Therefore, Defendants are entitled to summary judgment on Baker's *Monell* claims.

## II.    State Law Claim – Idaho Tort Claims Act

Baker asserts a state law tort claim against the County, Deputy Barlow, and Sheriff Goetz.[19] However, because no federal claims remain in this litigation, the Court

---

[19] During the hearing, the state law tort claim against the City and Officer Russell were conceded by Baker.

must determine whether it will exercise supplemental jurisdiction over the state law claim. For the following reasons, the Court declines to do so.

Pursuant to 28 U.S.C. Section 1367(c)(3), the Court has discretion to decide whether to decline, or exercise, supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). In exercising its discretion, the Court must consider whether retaining or declining jurisdiction will best accommodate "the objectives of economy, convenience and fairness to the parties, and comity." *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). "The fact that the federal claims giving rise to federal jurisdiction no longer remain in a case, however, weighs in favor of a decision to decline supplemental jurisdiction." *Sadid v. Vailas*, 936 F.Supp.2d 1207, 1233 (D. Idaho 2013); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

This case is in the preliminary stages of litigation and the Court has not evaluated the merits of the state law claim. The Idaho state court, which does not appear to be any less convenient to the parties, is in a better position to handle the remaining state law tort claim. Accordingly, the Court declines to exercise its supplemental jurisdiction and will dismiss Baker's state law claim without prejudice to allow Baker to refile in state court should he choose to do so.

MEMORANDUM DECISION AND ORDER - 38

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for

Summary Judgment (Dkt. 28) is **GRANTED** as follows:

1)      Plaintiff's claims brought under 42 U.S.C. Section 1983 are dismissed with

prejudice.

2)      Plaintiff's claim brought under state law is dismissed without prejudice.


DATED: January 3, 2022

_____

Honorable Candy W. Dale
Chief United States Magistrate Judge